# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARY BELL, JANICE GRIDER, CINDY PROKISH, JOHN HOFFMAN, and PAMELA LEINONEN, individually and as representatives of a class of similarly situated persons of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan), | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-02062-TWP-MPB |
| PENSION COMMITTEE OF ATH HOLDING COMPANY, LLC, ATH HOLDING COMPANY, LLC, BOARD OF DIRECTORS OF ATH HOLDING COMPANY, LLC, JOHN DOES 1-40, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ENTRY ON MOTION TO DISMISS

Before the Court is a Motion to Dismiss filed by Defendants ATH Holding Company, LLC ("ATH"), ATH's Board of Directors ("Board"), and ATH's Pension Committee ("Pension Committee") (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants are fiduciaries of the Anthem 401(k) Plan[1] ("Plan"). On March 16, 2016, Plaintiffs Mary Bell, Janice Grider, Cindy Prokish, John Hoffman, and Pamela Leinonen, individually and as representatives of a class of similarly situated persons of the Plan (collectively, "Plaintiffs"), filed an Amended Complaint against the Defendants under the Employee Retirement Income Security Act ("ERISA"), alleging breach of fiduciary duty for unreasonable investment management fees, breach of fiduciary duty for unreasonable administrative fees, breach of

---

[1] Before December 2, 2014, the Plan was known as the WellPoint 401(k) Retirement Savings Plan.

fiduciary duty for failure to evaluate and monitor the Plan's investments, failure to monitor fiduciaries, and refusal to supply requested information.  (Filing No. 23.)  Defendants now seek to dismiss Plaintiffs' Amended Complaint as meritless, untimely, and inadequately pled.  (Filing No. 37.)  For the following reasons, the Court **grants in part and denies in part** Defendants' Motion to Dismiss.

## I.   <u>BACKGROUND</u>

The following facts are undisputed.  The Plan is a defined contribution plan within the meaning of ERISA.  *See* 29 U.S.C. § 1002(34).  The Plan is sponsored by ATH and, as of December 31, 2014, is one of the largest 401(k) plans in the United States.  It provides retirement income for employees of ATH and any direct or indirect subsidiary of the company that has been offered the Plan.  The retirement benefits are limited to the value of an employee's account, which depends upon employee and employer contributions, as well as investment options' fees and expenses.  Plaintiffs are current or former participants of the Plan.

The Pension Committee serves as the Plan's administrator and is responsible for selecting, monitoring, and removing Plan investment options available to participants.  As of December 31, 2014, Defendants offered twenty-six investment options, including: eleven Vanguard mutual funds[2], twelve Vanguard target date funds, two non-Vanguard mutual funds[3], and an Anthem, Inc. common stock fund.  (Filing No. 23 at 8-9.)  In connection with the administration of the Plan, the fiduciaries hired the Vanguard Group, Inc. ("Vanguard") to serve as the record keeper to the Plan.  Vanguard's duty is to keep track of each individual participant's account, contributions,

---

[2] 1) Vanguard Prime Money Market Fund; 2) Vanguard Institutional Index Fund; 3) Vanguard Total Bond Market Index Fund; 4) Vanguard Wellington Fund; 5) Vanguard Total International Stock Index Fund; 6) Vanguard PRIMECAP Fund; 7) Vanguard Extended Market Index Fund; 8) Vanguard Windsor II Fund; 9) Vanguard Explorer Fund; 10) Vanguard Inflation-Protected Securities Fund; 11) Vanguard International Growth.

[3] 1) Artisan Midcap Value Fund and 2) Touchstone Sands Capital Select Growth Fund.

2

distributions, gains and losses, as well as handling communications with participants. Vanguard's recordkeeping fees are paid from the Plan's assets.

On July 22, 2013, to lower expense ratios, the Plan restructured the investments offered to participants and replaced the higher-cost share classes with their lower-cost versions. (Filing No. 23 at 13-14.) For instance, prior to restructuring, the Plan's two non-Vanguard mutual fund options—the Artisan Mid Cap Value Fund and the Touchstone Sands Capital Select Growth Fund—amounted to 120 bps[4] (1.2%), and 103 bps (1.03%), respectively. After the Plan's restructuring, the price of the two non-Vanguard mutual fund options decreased to 95 bps (.95%) and 79 bps (.79%), respectively. The Plan also changed the handling of fees. Previously, participants were charged approximately eighty to ninety-four dollars annually to compensate Vanguard's recordkeeping fees. As of September 30, 2013, the recordkeeping fees billed at a flat rate of forty-two dollars per participant per year for anyone with an account balance over $1,000.00. Participants with an account balance under $1,000.00 did not pay a recordkeeping fee.

On October 5 and October 27, 2015, approximately two years after Defendants restructured the Plan, Plaintiffs sent letters requesting Plan information from the Pension Committee. The Pension Committee, however, refused to accept Plaintiffs' letters and the letters were returned to Plaintiffs' counsel. Thereafter, on March 16, 2016, Plaintiffs filed a five count Amended Complaint alleging, from December 29, 2009 through July 22, 2013, Defendants breached their fiduciary duties under ERISA. Under Count I of the Amended Complaint, Plaintiffs assert that Defendants breached their fiduciary duty by causing the Plan to pay unreasonable investment management expenses in violation of 29 U.S.C. § 1104(a)(1)(A), (B). Count II states that Defendants breached their fiduciary duty by causing the Plan to pay unreasonable administrative

---

[4] "Bps" refers to basis points. One hundred basis points is 1.0%.

3

expenses.  Count III alleges that Defendants breached their fiduciary duty by providing a money market investment, while failing to prudently consider a stable value fund.  Count IV asserts that Defendants failed to properly monitor and remove fiduciaries.  Lastly, Count V states that Defendants failed to supply Plan information upon request in violation of 29 U.S.C. §1132(c)(1). (Filing No. 23.)

Defendants now move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiffs' claims are meritless, untimely, and inadequately pled.  (Filing No. 37.)

## II.   <u>LEGAL ANALYSIS</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact."  *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted).  To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.   ERISA FIDUCIARY STANDARDS

ERISA imposes general standards of loyalty and prudence that require fiduciaries to act solely in the interest of plan participants and to exercise their duties with the "care, skill, prudence, and diligence" of an objectively prudent person.  29 U.S.C. § 1104(a)(1).  Section 1104 specifically states:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—[]for the exclusive purpose of: **(i)** providing benefits to participants and their beneficiaries; and **(ii)** defraying reasonable expenses of administering the plan;…with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(A), (B).  Additionally, § 1105(a) provides that one fiduciary may be liable for breaches of fiduciary duty committed by another fiduciary under specified circumstances.

Although ERISA normally imposes a fiduciary duty, the statute provides a safe harbor and modifies that rule for plans that provide for individual accounts and allows a participant or beneficiary "to exercise control over the assets in his account."  29 U.S.C. § 1104(c)(1).  In order for the safe harbor to apply, the participant must: 1) have the right to exercise independent control over the assets; 2) be able to choose from an array of investment options; and 3) be given or have the opportunity to obtain "sufficient information to make informed decisions with regard to investment alternatives available under the plan."  *Hecker v. Deere & Co.*, 556 F.3d 575, 587 (7th Cir. 2009) (quoting 29 C.F.R. § 2550.404c–1(b)(2)(i)(B)).

# IV.   DISCUSSION

Defendants move to dismiss Plaintiffs' Amended Complaint, contending that Plaintiffs failed to state a claim upon which relief can be granted.  Defendants also assert that Plaintiffs' claims are untimely.  The Court will address each issue in turn.

## A.   Failure to State a Claim.

### 1.   Count I:  Unreasonable Investment Management Fees.

Under Count I, Plaintiffs assert that Defendants breached their fiduciary duty by selecting and retaining Plan investment options with excessively high fees instead of choosing identical lower-cost investment options that were available during the relevant period.  Defendants assert that they did not breach their fiduciary duty because the Plan offered an array of different investments with an acceptable range of fees.  Defendants rely on *Hecker* and *Loomis* when contending that the Seventh Circuit has clearly and repeatedly found that a fiduciary's duty is limited to offering choices across the fee spectrum to participants and that duty does not require Defendants to achieve cost optimization.  *Hecker v. Deere & Co.,* 556 F.3d 575, 586 (7th Cir. 2009) (affirming district court's ruling that defendants did not breach their fiduciary duty because "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund"); *Loomis v. Exelon Corp.*, 658 F.3d 667, 674 (7th Cir. 2011) (affirming district court's dismissal of plaintiffs' breach of fiduciary duty claim where defendant offered "high-expense, high-risk, and potentially high-return funds, together with low-expense index funds [], and low-expense, low-risk, modest-return bond funds" and left the choice to the participants).  Defendants also assert that Plaintiffs failed to raise a single allegation suggesting that Defendants engaged in any self-dealing or disloyal action favoring their own interests over the interests of the participants and beneficiaries.  Defendants contend they acted prudently and there is a lawful

explanation for the high investment option fee; specifically, prior to implementing a flat administrative fee, participants with larger balances paid a higher share for the fees than those with a lower balance, and Plaintiff's failed to allege this decision was imprudent.

In response, Plaintiffs contend that Defendants' reliance on *Hecker* and *Loomis* is misplaced because Plaintiffs do not claim any problem with the "array" of Plan investment options offered by Defendants, but take issue only with the cost of the investment options.  Plaintiffs rely on *Tibble* when arguing that Defendants breached their fiduciary duty because, from December 29, 2009 through July 22, 2013, Defendants provided investment options at a higher cost when the same investment options were available at a lower cost.  *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015) ("a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones"); *see also Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir. 2011) ("[i]t is the fiduciary's responsibility…to screen investment alternatives and to ensure that imprudent options are not offered to plan participants"); *George v. Kraft Foods Glob., Inc.*, 641 F.3d 786, 796 (7th Cir. 2011) ("a fiduciary's failure to exercise his or her discretion—i.e., to balance the relevant factors and make a reasoned decision as to the preferred course of action—under circumstances in which a prudent fiduciary would have done so is a breach of the prudent man standard of care").  Plaintiffs also assert that *Hecker* is irrelevant to this case because the safe harbor does not protect Defendants from a breach of fiduciary duty claim simply because Defendants provided an array of investment options.  *See Howell*, 633 F.3d at 567 ("the selection of plan investment options and the decision to continue offering a particular investment vehicle are acts to which fiduciary duties attach, and that the safe harbor is not available for such acts").

The Court agrees the Defendants' reliance on *Hecker* and *Loomis* is misplaced.  In both *Hecker* and *Loomis*, plaintiffs generally asserted that defendants violated their fiduciary duty by

not offering certain investment options and selecting investment options with excessive fees. *Hecker*, 556 F.3d at 586; *Loomis*, 658 F.3d at 674.  Neither court addressed whether a defendant violates their fiduciary duty in selecting high-cost investment options where *identical* investment options are available at a lower-cost.  Accordingly, the allegations set forth are sufficient to survive a motion to dismiss, and Defendants' Motion to dismiss Count I **denied**.

### 2.   Count II: Unreasonable Administrative Fees.

Under Count II, Plaintiffs argue that Defendants breached their fiduciary duty because, prior to restructuring, Defendants failed to solicit competitive bids from vendors on a flat participant fee and failed to monitor recordkeeping compensation to ensure that the Plan's record keeper received only reasonable compensation.  Plaintiffs assert that a reasonable compensation for recordkeeping is a flat fee of thirty dollars per participant.  Defendants contend the Court should dismiss Count II because Plaintiffs failed to make any factual allegations that the recordkeeping fees are the result of any type of self-dealing.  Defendants argue that Plaintiffs also failed to plead any facts to support the claim that a reasonable recordkeeping fee for the Plan would have been thirty dollars per participant or that there were other vendors equally capable of providing recordkeeping services for the Plan at that lower cost.  They assert that without these facts, Plaintiffs' claim is nothing more than a conclusory allegation that the Plan's recordkeeping fees were unreasonable because they were higher than what Plaintiffs thought they should be.

In response, Plaintiffs argue that prudent fiduciaries engage in a competitive bidding process on a regular basis to ensure recordkeeping fees remain reasonable; however, Defendants failed to engage in competitive bidding.  Defendants allowed Vanguard to receive compensation through asset-based revenue sharing payments from the Plan's mutual funds and when the Plan's assets increased, so did Vanguard's recordkeeping fees.  Plaintiffs argue Defendants' failure to

prudently monitor Vanguard's compensation to ensure that Vanguard's fees did not exceed a reasonable fee for recordkeeping services, amounts to a breach of fiduciary duty.  Plaintiffs assert, however, that they cannot and should not be required at the pleading stage to name a vendor that could have provided services for the Plan at a significantly lower cost or to support their allegation that a reasonable fee for the Plan would have been a thirty dollar flat rate fee.

The Court finds that Plaintiffs were not required to allege that the recordkeeping fees were the result of any type of self-dealing, but were required to assert only that Defendants failed to act with prudence under §1104 when failing to solicit bids and to monitor and control recordkeeping fees.  *See* 29 U.S.C. § 1104(a)(1)(A), (B).  The Court concludes that Plaintiffs' allegations under Count II are sufficient to state a claim for relief.  *See George*, 641 F.3d at 798–99 (Seventh Circuit reversing district court's grant of summary judgment to defendants on the issue of recordkeeping fees, and finding that defendants were not necessarily prudent in relying on the advice of consultants in lieu of soliciting bids from record keepers); *see also Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (affirming district court's conclusion that fiduciaries breached their fiduciary duties by "by failing diligently to investigate the [record keeper] and monitor Plan recordkeeping").  Accordingly, Defendants' Motion to Dismiss Count II for failure to state a claim is **denied**.

### 3.   Count III:  Failure to Consider the Use of a Stable Value Fund Instead of a Money Market Fund.

Under Count III, Plaintiffs allege the Defendants breached their fiduciary duty by providing and maintaining the Vanguard Prime Money Market Fund, while failing to prudently consider and make a reasoned decision regarding whether to use a stable value fund.  Defendants argue that Plaintiffs' claim fails because ERISA does not require a fiduciary to offer participants a specific investment type or even a particular mix of investment vehicles.  Defendants contend that a

9

fiduciary must offer only a menu of investment options and the composition of the menu is left to the fiduciaries.  *See Loomis*, 658 F.3d at 674; *Hecker*, 556 F.3d at 586.  Because participants had an array of choices across the risk spectrum, Defendants argue they cannot be faulted for offering a money market fund as a low-risk, low-return investment option instead of a higher-risk, higher-return stable value fund.  Defendants also contend that Plaintiffs failed to allege that the money market fund was mismanaged or that Defendants offered the money market fund as a result of self-dealing.

The Court first notes, and the parties agree, that Defendants did not have a duty to absolutely provide a stable value fund instead of a money market fund.  The issue is whether Defendants considered a stable value fund option and came to a reasoned decision for continuing to provide the money market fund instead.  Plaintiffs argue that Defendants breached their fiduciary duty because an average stable value fund has dramatically outperformed the Plan's money market fund, but despite the advantages, Defendants failed to provide a stable value fund.  Plaintiffs also contend that, had Defendants considered a stable value fund and weighed the benefits, Defendants would have removed the Plan's money market fund and provided a stable value fund.  The Court concludes that Plaintiffs' assertion is conclusory and is not enough to state a claim.  Although a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, as pled, Defendants' Motion to Dismiss Count III is **granted**.

4.      **Count IV: Failure to Monitor Fiduciaries.**

Count IV asserts that Defendants are responsible for monitoring and removing fiduciaries, specifically members of the Pension Committee.  Plaintiffs argue that Defendants breached their fiduciary monitoring duties by, among other things, failing to ensure that the monitored fiduciaries: 1) had a process for evaluating the Plan's administrative fees to ensure that the fees are reasonable; 2) considered comparable investment options, including lower-cost share classes of the identical mutual funds, that charged lower fees than the Plan's mutual fund; and 3) removed appointees who continued to maintain imprudent, excessive-cost investments and an option that did not keep up with inflation.  Both parties agree that Count IV is entirely derivative of the underlying breach of fiduciary duty claims outlined in Counts I through III.

For the reasons stated above with respect to Counts I and II, the Court declines to dismiss Plaintiffs' failure to monitor claims regarding the consideration of low-cost, identical mutual funds and the evaluation of recordkeeping fees.  The Court, however, dismisses Plaintiffs' failure to monitor claim as it relates to their contention that Defendants should have offered and considered a stable value fund.  Accordingly, Defendants' Motion to dismiss Count IV is **granted in part and denied in part**.

5.      **Count V:  Refusal to Supply Requested Information.**

Count V states that Defendants violated ERISA because the Plan Administrator—i.e., the Pension Committee—failed to supply Plan information upon request.  Under 29 U.S.C. § 1024, "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4).  An administrator may be liable to a participant

11

or beneficiary in the amount of up to $100.00 a day for failure or refusal to comply with a request

for the latest copies of plan documents within thirty days after such request.  29 U.S.C. § 1132(c)(1).

Defendants argue that the Court should dismiss Count V because Plaintiffs allege only that

they sent two requests to the Pension Committee, who refused the requests upon delivery, but

Plaintiffs failed to allege that the Pension Committee ever received their requests.  *See Jacobs v.*

*Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1042 (N.D. Ill. 2007)

(holding "imposing a penalty on the Plan Administrator when he did not receive the request for

documents would appear to be at odds with the Seventh Circuit's guidance that the purpose of

Section 1132(c) is not so much to punish as it is to induce plan administrators to comply with the

notice requirements of ERISA"); *Romero v. SmithKline Beecham*, 309 F.3d 113, 119–20 (3d Cir.

2002) ("section 502(c)(1) requires actual receipt by the administrator… it is unlikely that Congress

wanted to impose a civil penalty on a person who has not engaged in any wrongful conduct").

In response, Plaintiffs contend that when looking at the plain text of § 1132(c)(1), "receipt"

is not an element of Plaintiffs' claim under Count V.  *See Kerr v. Charles F. Vatterott & Co.*, 184

F.3d 938, 947 (8th Cir. 1999) (holding the statute does not require receipt and "there is a general

rebuttable presumption that a properly mailed document is received").  Plaintiffs also rely on *Kerr*

when arguing that Defendants' defense to the statutory penalty succeeds only if the defense is due

to factors "reasonably beyond the control" of the Pension Committee.  *See Kerr*, 184 F.3d at 947–

48 (quoting 29 U.S.C. § 1132(c)(1) "Any administrator ... who fails or refuses to comply with a

request for any information [under § 1024(b)(4)] ... '(unless such failure or refusal results from

matters reasonably beyond the control of the administrator)' may be liable for a discretionary

penalty").  Plaintiffs argue that the Pension Committee deliberately refused to accept two requests

from Plaintiffs' attorneys, which does not amount to "matters reasonably beyond the control of the" Pension Committee.

The Court finds that Defendants' reliance on *Jacob* and *Romero* is misplaced.  In *Jacob*, the plan administrator did not receive the request for information because the request was sent to the wrong address.  Similarly, in *Romero*, the plaintiffs sent a request to a representative other than the plan administrator and two months later the plan administrator provided the plan information. The court in *Romero* reasoned that "the 30–day period should not begin to run until the request is actually received [] by the administrator… [to provide] adequate protection for an administrator in a situation in which a request for information is not delivered or sent directly to the administrator." *Romero*, 309 F.3d at 120.  Neither case bears on Plaintiffs' contention that they twice directed requests for information to the Pension Committee at the address provided by Defendants and the Pension Committee deliberately refused to accept both requests.  Accordingly, because Plaintiffs allege that the Pension Committee refused to accept the requests and Defendants do not allege that that failure was beyond the control of the Pension Committee, Defendants' Motion to dismiss Count V **denied**.  *See* 29 U.S.C. § 1132(c)(1) (an administrator may be liable to a participant or beneficiary in the amount of up to $100.00 a day for failure or refusal to comply with a request for the latest copies of plan documents within thirty days after such request, "unless such failure or refusal results from matters reasonably beyond the control of the administrator").

## B.     <u>Untimely.</u>

Under ERISA, a breach of fiduciary duty complaint is timely if filed no more than six years after "the date of the last action which constituted a part of the breach or violation" or "in the case of an omission the latest date on which the fiduciary could have cured the breach or violation."  29 U.S.C. § 1113(1).  However, no action may be commenced "three years after the earliest date on

which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(2).  The Seventh Circuit defines "actual knowledge" as "knowledge of 'the essential facts of the transaction or conduct constituting the violation,'" with the caveat that "it is 'not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality.'" *Fish v. GreatBanc Trust Co*., 749 F.3d 671, 679 (7th Cir. 2014) (quoting *Rush v. Martin Petersen Co.,* 83 F.3d 894, 896 (7th Cir.1996)).

Defendants argue that Counts I-IV of the Amended Complaint are untimely. Because Plaintiffs' allegations under Count III fail to state a claim, the Court will discuss only Defendants' arguments regarding Counts I, II, and IV.

### 1.    Count I:  Unreasonable Investment Management Fees.

Defendants argue Count I was filed untimely because Plaintiffs had actual knowledge since August 2012 that the Pension Committee selected investment options with excessive expense ratios and that lower-cost funds were available. Defendants contend that, in August 2012, it issued a "Plan Information" document to all participants that included a table clearly outlining the expense ratios for the Plan's various investment options.  Defendants argue that the document disclosed:  1) the mutual funds offered in the Plan included both institutional and investor share classes; 2) the investor shares had higher expense ratios than the institutional shares, even for other index funds; and 3) many of the funds offered through the Plan were invested investor shares.

In response, Plaintiffs rely on *Fish* when arguing that their claim under Count I is not time barred because they did not have actual knowledge of Defendants' procedures three years prior to filing their Complaint.  *See Fish*, 749 F.3d at 681 ("a plaintiff asserting a process-based claim under § 1104, § 1106(a), or both does not have actual knowledge of the procedural breach of fiduciary duties unless and until she has actual knowledge of the procedures used or not used by

14

the fiduciary"). Plaintiffs contend that the mere fact that Defendants disclosed the Plan's investment option fees to all participants does not provide participants with actual knowledge that Defendants could have provided a lower cost alternative, nor does it apprise participants of the process Defendants undertook to decide the higher-cost versions of those investments.

The Court agrees with Plaintiffs and finds that the essential fact under Count I that would commence the three-year statute of limitations is Plaintiffs' knowledge of identical lower-cost alternatives.  Count I is not time barred because, although the Plan Information document discloses the nature of the investment options offered, it did not disclose that identical lower cost alternatives were available.  Accordingly, Plaintiffs did not have actual knowledge of Defendants' breach of fiduciary duty in 2012 and dismissal on this basis in not warranted.

### 2.    Count II:  Unreasonable Administrative Fees.

Defendants also contend that Count II is untimely because Plaintiffs had actual knowledge of the Plan's recordkeeping fees since 2011.  Defendants argue that Plaintiffs had actual knowledge because, prior to the Plan's restructuring in 2013, the recordkeeping fees were bundled with the investment fees for each fund as part of the expense ratio and, since 2011, Plan documents reported the expense ratios.  Defendants assert that because the amount charged for recordkeeping was fully disclosed in a publicly filed report in October 2011, Plaintiffs had all the information they needed to allege that the Plan's recordkeeping fees were unreasonable and excessive in October 2011.

In response, Plaintiffs argue that Count II is a process-based claim and Plaintiffs currently do not have enough knowledge of Defendants' process for negotiating and monitoring the Plan's recordkeeping fees to specifically plead the defects.  *See Fish*, 749 F.3d at 681.  Plaintiffs also allege that the information Defendants disclosed in their annual reports did not provide Plaintiffs with actual knowledge that the Plan's recordkeeping fees were excessive.  Plaintiffs contend that

15

the Plan provided only the expense ratio and did not provide the actual fee amounts that Vanguard received.

The Court declines to find that Plaintiffs' claim under Count II is untimely, despite Defendants' contention that the Plan Information document provided Plaintiffs with actual knowledge of the essential facts underlying Plaintiffs' claim that recordkeeping fees were unreasonable.  The Court finds that, under Count II, Plaintiffs contend not only that the actual dollar amount for recordkeeping fees is excessive, but assert that the fees are unreasonable because Defendants failed to solicit competitive bids from vendors on a flat participant fee and failed to monitor recordkeeping compensation to ensure that Vanguard received only reasonable compensation.  *See Fish*, 749 F.3d at 681 ("to trigger the 'actual knowledge' statute of limitations clock under § 1113(2) for a process-based claim, the plaintiffs 'must have been aware of the process utilized by [the fiduciary] in order to have had actual knowledge of the resulting breach of fiduciary duty") (citations omitted).  Accordingly, because Defendants do not allege that Plaintiffs had actual knowledge of Defendants' solicitation and monitoring process, Defendants' Motion on this issue is **denied**.

### 3.     Count IV:  Unreasonable Administrative Fees.

As previously discussed, because Count IV is entirely derivative of the underlying breach of fiduciary duty claims outlined in the Amended Complaint, the Court finds that Plaintiffs' failure to monitor claims regarding Counts I and II are timely.  Accordingly, Defendants' Motion on this bases is **denied**.

## V.     CONCLUSION

For the above reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss.  (Filing No.37.)  Counts I, II, and V survive Defendants' Motion to Dismiss.

16

Count III fails to state a claim upon which relief can be granted, and is **dismissed.** Accordingly, because Count IV is derivative of Counts I through III, the Court **dismisses** Count IV only to the extent that it relies on Count III.  The Court concludes, however, that the dismissals should be with **without prejudice**.  Fed. R., Civ. P. 15 directs that courts should "freely" grant leave to amend a pleading "when justice so Fed. R. Civ. P. 15(a)(2).  If in fact, Plaintiffs' can plead sufficient facts to support their assertion that Defendants failed to prudently consider whether to use a stable value fund,  they are  granted leave to file a Second Amended Complaint regarding Count III and the dismissed portion of Count IV, within **fourteen (14) days** of the date of this Entry.

     **SO ORDERED**.

Date:  3/23/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

James Redd
SCHLICHTER BOGARD & DENTON LLP
jredd@uselaws.com

Heather Lea
SCHLICHTER, BOGARD & DENTON, LLP
hlea@uselaws.com

Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON, LLP
jschlichter@uselaws.com

Kurt C. Struckhoff
SCHLICHTER, BOGARD & DENTON, LLP
kstruckhoff@uselaws.com

Michael A. Wolff
SCHLICHTER, BOGARD & DENTON, LLP
mwolff@uselaws.com

Troy A. Doles
SCHLICHTER, BOGARD & DENTON, LLP
tdoles@uselaws.com

Ada W. Dolph
SEYFARTH SHAW LLP
adolph@seyfarth.com

Jason Priebe
SEYFARTH SHAW LLP
jpriebe@seyfarth.com

Ian Hugh Morrison
SEYFARTH SHAW LLP (Chicago)
imorrison@seyfarth.com