# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

MARY BELL, JANICE GRIDER,                    )
CINDY PROKISH individually and as            )
representatives of a class of similarly situated )
persons of the Anthem 401(k) Plan (formerly the )
WellPoint 401(k) Retirement Savings Plan),   )
JOHN HOFFMAN, and PAMELA LEINONEN,           )
                                             )
        Plaintiffs,                          )
                                             )
        v.                                   ) Case No. 1:15-cv-02062-TWP-MPB
                                             )
PENSION COMMITTEE OF ATH HOLDING             )
COMPANY, LLC, ATH HOLDING COMPANY,           )
LLC, and BOARD OF DIRECTORS OF ATH           )
HOLDING COMPANY, LLC,                        )
                                             )
        Defendants.                          )
                                             )
─────────────────────────────────────────────   )
                                             )
VANGUARD GROUP, INC.,                        )
                                             )
        Interested Party.                    )

## ENTRY ON PENDING MOTIONS

    This matter is before the Court on a Motion for Class Certification filed by Plaintiffs Mary

Bell ("Bell"), Janice Grider ("Grider"), Cindy Prokish ("Prokish"), John Hoffman ("Hoffman"),

and Pamela Leinonen ("Leinonen") (collectively, "Plaintiffs"). (Filing No. 117.)  Defendants are

fiduciaries of the Anthem 401(k) Plan ("the Plan")[1].  Plaintiffs allege that Defendants Pension

Committee of ATH Holding Company, LLC ("the Pension Committee"), ATH Holding Company,

LLC ("ATH"), and Board of Directors of ATH Holding Company, LLC, ("the Board")

(collectively, "Defendants") breached their fiduciary duties by causing Plaintiffs' retirement plan

to pay excessive investment and management fees to Vanguard Group, Inc. ("Vanguard"), and

─────────────────────
[1] Before December 2, 2014, the Plan was known as the WellPoint 401(k) Retirement Savings Plan.

also invested in an imprudent money market fund, resulting in tens of millions of dollars of Plan losses. Plaintiffs seek to represent two classes for the alleged breaches of fiduciary duty: 1) the Administrative and Investment Management Fee Class and 2) the Money Market Fund Class.

Also before the Court is Defendants' Motion for Leave to File a Supplemental Brief in Support of Their Opposition to Plaintiffs' Motion for Class Certification, (Filing No. 189) and Plaintiffs' Motion for Leave to Respond to Defendants' Proposed Supplemental Brief, (Filing No. 201). These two motions are granted. For the reasons set forth below, Plaintiffs Motion to Certify the Investment and Management Class is **denied**, and Plaintiffs' Motion to Certify the Money Market Class is **granted**.

## I.  <u>BACKGROUND</u>

The Plan is a defined contribution plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA").  *See* 29 U.S.C. § 1002(34).  The Plan is sponsored by ATH and, as of December 31, 2014, is one of the largest 401(k) plans in the United States, with over $5.1 billion in total assets.  It provides retirement income for employees of ATH and any direct or indirect subsidiary of the company that has been offered the Plan.  The retirement benefits are limited to the value of an employee's account, which depends upon employee and employer contributions, as well as investment options' fees and expenses.  Plaintiffs are current and former participants of the Plan.  The Pension Committee is appointed by the Board, and serves as the Plan's administrator which entails responsibility for the control, management, and administration of the Plan's investment options.

Defendants select and determine the available investment options offered in the Plan. (Filing No. 87 at 7.)  These decisions are made at the Plan level, therefore the available options and the associated expenses are the same for all Plan participants.  The Plan offers three tiers of

investment options: 1) Tier 1, the Target Date Funds; (2) Tier 2, the Core Funds; and Tier 3, the Vanguard Brokerage Option. (Filing No. 123 at 10.) The Plan's investment options vary based on risk and return profiles. Vanguard is the Plan's recordkeeper, and the Plan pays Vanguard investment management fees which are deducted from participants' accounts on a pro rata basis, based on each fund's "expense ratio"—a percentage of a fund's assets charged for "expenses that reduce the rate of return of the investment option." (Filing No. 38-3 at 6.) Until 2013, Defendants compensated Vanguard for its administrative services (primarily recordkeeping) through revenue sharing payments from the Plan's mutual funds, paid through a portion of the Plan's mutual funds expense ratios. (Filing No. 87 at 30.) Effective July 22, 2013, Defendants charged a flat annual recordkeeping fee of $42.00 to each participant's account with a balance over $1,000.00. (Filing No. 38-4 at 6.)

On March 23, 2017, this Court denied in part and granted in part Defendants' Motion to Dismiss. (Filing No. 80 at 2.) The Court dismissed Plaintiffs' claim regarding the Vanguard Prime Money Market Fund (the "Money Market Fund") without prejudice. Plaintiffs then filed the operative Second Amended Complaint, which provides additional facts supporting the Money Market Fund claim. (*See* Filing No. 87 at 82-85.) Plaintiffs summarize their allegations against Defendants, contained in the Second Amended Complaint as the following: 1) Defendants provided investment options charging unreasonable management fees compared to available superior institutional investment products; 2) Defendants failed to monitor and control the excessive administrative expenses paid to Vanguard; 3) Defendants provided the Money Market Fund as the Plan's sole capital preservation option even though it did not provide any meaningful retirement benefits; and 4) Defendants failed to prudently and regularly monitor the Money Market Fund. (Filing No. 118 at 4-5.) Plaintiffs seek certification of the following classes:

**Administrative Fee and Investment Management Fee Class**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) from December 29, 2009 through the date of judgment, excluding the Defendants.

**Money Market Fund Class**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who, from December 29, 2009 through the date of judgment, excluding the Defendants, invested in the Vanguard Money Market Fund.

*Id.* at 5.

## II.   <u>LEGAL STANDARD</u>

To certify a plaintiff class under Federal Rule of Civil Procedure 23, the Plaintiffs must first satisfy all four elements of Rule 23(a) by demonstrating that: (1) the class is too numerous to join all members; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of those of the class members; and (4) the representative parties will fairly and adequately represent the class.  As the Seventh Circuit has noted, plaintiffs must satisfy the trial court, "after a rigorous analysis," that the prerequisites of Rule 23(a) have been satisfied.  *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160–61 (1982)).  If these requirements are met, plaintiffs must also satisfy at least one subsection of Rule 23(b).

> Rule 23(b)(1) provides for a non-opt-out class action where individual actions could 'establish incompatible standards of conduct for the party opposing the class' or 'as a practical matter, would be dispositive of the interests of the other members of the class' or [] 'would be dispositive of the interests of the other members not parties to the individual adjudications.'

*Spano v. Boeing Co.,* 294 F.R.D. 114, 119 (S.D. Ill. 2013) (quoting Fed. R. Civ. P. 23(b)(1)).  Rule 23(b)(3) applies if the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

The parties seeking class certification bear the burden of proof in establishing each of the requirements under Rule 23. *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 90 (7th Cir. 1977). The failure to satisfy any one of these elements precludes certification. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993). In deciding whether to certify a class, the court is not required to accept the allegations in the complaint as true. The court should make any factual and legal inquiries needed to ensure that the requirements for class certification are satisfied, even if the underlying considerations overlap with the merits of the case. *Szabo v. Bridgeport Machines*, *Inc.*, 249 F.3d 672, 676 (7th Cir. 2001); *In re Bromine Antitrust Litigation*, 203 F.R.D. 403, 407 (S.D. Ind. 2001). In evaluating class certification, the court must take into consideration the substantive elements of plaintiff's cause of action, inquire into the proof necessary for the various elements, and envision the form that trial on the issues would take. *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 377 (S.D. Ill. 2008).

Throughout this analysis, the court bears in mind that a principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner. *See Falcon*, 457 U.S. at 155. In doing so, Rule 23 gives the district courts "broad discretion to determine whether certification of a class-action lawsuit is appropriate." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (internal quotation omitted). That said, "similarities of claims and situations must be demonstrated rather than assumed." *Szabo*, 249 F.3d at 677. "The propriety of class treatment thus will turn on the circumstances of each case." *Spano v. The Boeing Co.,* 633 F.3d 574, 582 (7th Cir. 2011).

## III.  DISCUSSION

As referenced earlier, Plaintiffs seek to certify an Administrative Fee and Investment Management Fee Class (the "Fee Class") and a Money Market Fund Class ("Money Market Fund Class").  The Court will discuss the proposed classes in turn.

### A.  Fee Class

The Fee Class is defined as:  "All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) from December 29, 2009 through the date of judgment, excluding the Defendants."  (Filing No. 118 at 5.)  Defendants contend that Plaintiffs cannot satisfy all of the requirements of Rule 23(a).  Specifically, relying on the Seventh Circuit's *Spano* decision, Defendants argue that Plaintiffs cannot show the third and fourth requirements: typicality and adequacy.  (Filing No. 123 at 18.)  Plaintiffs respond that "the class is properly defined to include all Plan participants, because all participants contributed to the fees."  (Filing No. 136 at 2).

### 1.  Numerosity

Rule 23(a)(1) provides that the class must be so "numerous that joinder of all the members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met." *Gentry v. Floyd Cty.,* 313 F.R.D. 72, 77 (S.D. Ind. 2016), on reconsideration in part, No. 4:14-CV-00054-RLY-TAB, 2016 WL 4088748 (S.D. Ind. July 25, 2016) (citation omitted).  Plaintiffs represent that the Fee Class includes *all* Plan participants which is roughly 60,000 participants.  (Filing No. 118 at 19.) Defendants do not dispute that the class satisfies numerosity.

### 2.    **Commonality**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "[A] common nucleus of operative fact is usually enough to satisfy the commonality requirement."  *Spano*, 294 F.R.D. at 120 (S.D. Ill. 2013).  "A common nucleus of operative fact exists where "defendants have engaged in standardized conduct towards members of the proposed class."  *Gentry,* 313 F.R.D. at 77–78 (S.D. Ind. 2016).  Courts have found the commonality requirement met in ERISA cases and have certified excessive fee classes when the fees affect the plan as a whole.  *Spano,* 294 F.R.D. at 120 (finding that defendants' decisions regarding the plan's administrative expenses and investment options affected all participants in the same manner as the defendants did not act individually to particular participants satisfying commonality requirement).  *See also Spano,* 633 F.3d at 586 (affirming district court's finding that the class met commonality) ("The assertion that [] imposes excessive fees on all participants, as well as the assertion that [] has failed to satisfy its fiduciary duties in its selection of investment options, both describe problems that would operate across the plan rather than at the individual level.").

As in *Spano*, this class involves common questions of fact regarding the alleged excessive fees paid by all participants affecting the Plan as a whole.  Thus, the Court finds that commonality has been met pursuant to Rule 23(a)(2).

### 3.    **Typicality**

Typicality is closely related to commonality.  *Spano,* 294 F.R.D. at 120.  "The typicality requirement is 'meant to ensure the named representative's claims have the same essential characteristics as the claims of the class at large.'"  *Id.* (quoting *Oshana v. Coca-Cola,* 472 F.3d 506, 514 (7th Cir. 2006)).  The Seventh Circuit considered typicality in the context of a defined-

contribution plan—the type of plan at issue here—noting "that there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano,* 633 F.3d 574, 586 (7th Cir. 2011).

Relying on the Seventh Circuit's rejection, in *Spano*, of classes that were too broadly defined to satisfy typicality and adequacy requirements, Defendants contend that there is a lack of congruence between the named plaintiffs and the class members. (Filing No. 123 at 18-19.) In *Spano*, the class certified by the district court—described by the Seventh Circuit as "breathtaking in its scope"—included many participants in the past who never held a single share in either or both of the funds at issue that was held by the named class representatives. *Id.* at 586. The Seventh Circuit acknowledged that one or more better-defined and more-targeted classes could satisfy the class action requirements, and upon remand the district court certified a more narrow class. *Id.* at 590; *see also Spano*, 294 F.R.D. at 121-22.

It is undisputed that there are two fee structures at issue during the relevant time period for the proposed class. Here, the Plan paid administrative and expense fees (also referred to as recordkeeping fees) via revenue sharing until September 2013 when the Plan switched to a flat fee of $42.00 per participant with an account balance of over $1,000.00. Plaintiffs respond that under both fee structures, Defendants paid excessive fees to Vanguard exceeding the reasonable market rate of $30 per participant. With regards to the revenue sharing arrangement, Plaintiffs approximate that the Plan paid approximately $80 to $94 per participant per year from 2010 to 2013. (Filing No. 136 at 6.) While Plaintiffs concede that "the nature of an asset-based system is that those with higher balances paid more, and vice versa", thus every participant would not be literally charged $80.00 to $94.00 per year, Plaintiffs ignore the typicality issues caused by

including a time period covering two different fee structures within the class. (Filing No. 136 at 6.) Those participants with the highest account balances within the Plan would seemingly now benefit from a flat fee of $42.00. Even those paying $80.00 to $94.00, under the revenue sharing arrangement, are better positioned with the flat fee of $42.00, despite the allegation that it was still above the $30.00 market rate benchmark. Moreover, Defendants point out that 51% of the unnamed class members included in the proposed class, including the named class representative Grider, did not pay more than the proposed market rate of $30.00 per participant in administrative fees from December 29, 2009 through July 22, 2013. (Filing No. 123 at 21.) While these class members might be considered to be paying excessive fees under the $42.00 flat fee structure, this still would not cure the typicality problems caused by the overly broad class covering the revenue sharing time period. And finally, those members with an account balance under $1,000.00 do not pay recordkeeping fees at all under the flat fee structure, but are still included in the class.

Plaintiffs contend that Defendants' claimed conflict among class participants above and below the $30.00 benchmark is a false dispute since Plaintiffs' claim is based on the total recordkeeping fees paid and each participant would be entitled to their pro rata share of the fees recovered if successful. (Filing No. 136 at 7.) The Court is not persuaded by this argument.

The Court agrees with Defendants that the inclusion of 51% unnamed class members in the proposed class under the revenue sharing fee structure that paid below the proposed benchmark constitutes a majority of class members who would not have suffered the injury typical of the named Plaintiffs' claim which defeats typicality from December 29, 2009 through July 22, 2013. Rather than a trivial level of intra-class conflict, which the Seventh Circuit has held would not defeat class certification, 51% represents a significant portion of class members that were not harmed under the revenue sharing fee structure. The proposed class definition is too broad and

Plaintiffs' suggestion that each participant would only receive their pro rata share of fees does not cure the typicality issue.

"It is against this backdrop that readers must understand *Spano* and its warnings that plaintiffs and courts must take care to avoid certifying classes in which a significant portion of the class may have interests adverse to that of the class representative." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013). The inclusion of two different fee structures, in the proposed class, in which some class members paid less than the proposed market rate under the revenue sharing arrangement, while some members pay less under the current flat fee is precisely the type of broad class certification that the Seventh Circuit has rejected where class treatment becomes untenable. Therefore, the Court finds that the Fee Class fails to meet the typicality requirement.

### 4. **Adequacy**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[T]here is a constitutional dimension to this part of the inquiry; absentee members of a class will not be bound by the final result if they were represented by someone who had a conflict of interest with them or who was otherwise inadequate." *Spano,* 633 F.3d at 586–87. Adequacy of representation implicates more than competent counsel. Defendants do not dispute that class counsel is competent. *Spano,* 633 F.3d at 586.

Concerning adequacy of the named class representatives, Defendants have filed a Motion for Leave to File a Supplemental Brief in Support of Their Opposition to Plaintiffs' Motion for Class Certification, (Filing No. 189), which contains Facebook messages between Prokish and Grider discussing the present case. This Motion is **granted**. Plaintiffs' Motion for Leave to

Respond to Defendants' Proposed Supplemental Brief, (Filing No. 201), is also **granted**. Prokish and Grider exchanged Facebook messages that they had no clue about what the class was suing about (Filing No. 189 at 13). Both Prokish and Grider expressed sentiments that they "were over" the case, while Prokish appears to contemplate not attending a deposition. *Id.* at 4-5. Plaintiffs respond that the messages demonstrate a basic understanding of the lawsuit particularly with regards to the interplay between Anthem and the fees charged by Vanguard. (Filing No. 201-1 at 1.) "An adequate class representative must maintain only an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *George v. Kraft Foods Glob., Inc.,* 251 F.R.D. 338, 350–51 (N.D. Ill. 2008). The Court agrees with Plaintiffs that the messages reveal a basic high-level understanding of the class action, in that it was about fees, which is the minimum requirement. However, the messages raise serious concerns regarding Prokish and Grider's willingness to serve as class representatives.

As noted previously, because of intra-class conflicts the Fee Class fails typicality, but even if it cleared the typicality hurdle, Prokish and Grider have stopped just short of conceding via the Facebook messages that they will not fairly nor adequately represent this class due to a lack of willingness. Nevertheless, Plaintiffs point to the additional three named Plaintiffs (Bell, Hoffman, and Leinonen) as adequate representatives.

However, Defendants also take issue with all of the named Plaintiffs because each testified that he or she pursued this litigation in response to advertisements from class counsel. (Filing No. 123-1 at 27; Filing No. 123-2 at 25; Filing No. 123-3 at 10; Filing No. 123-4 at 11; Filing No. 123-5 at 10). Each also testified that they had no complaints about the Plan or its fees until after they spoke with counsel. (Filing No. 123-5 at 9; Filing No. 123-4 at 10-11; Filing No. 123-3 at 10; Filing No. 123-2 at 24; Filing No. 123-1 at 27). Quoting *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102,

110-11, Plaintiffs respond that the nature of the breach of fiduciary claims is that "the average person would have no reason to believe that the administrator of his 401(k) Plan was acting imprudently." The Court agrees. "[V]ery little about the mutual fund industry or the management of 401(k) plans can plausibly be described as transparent." *Leimkuehler v. Am. United Life Ins. Co.,* 713 F.3d 905, 908 (7th Cir. 2013). Although the remaining class representatives (Bell, Hoffman, and Leinonen) demonstrate adequate representation by showing a general understanding of the Fee Class allegations, because the class fails the typicality requirement, Plaintiffs' motion for class certification is **denied**. Accordingly, the Court dispenses with discussion on the type of class action to be certified under Rule 23(b). Fed. Civ. P. 23 (b).

**B.    Money Market Fund Class**

As noted previously, the Money Market Fund Class is defined as: "All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who, from December 29, 2009 through the date of judgment, excluding the Defendants, invested in the Vanguard Money Market Fund." (Filing No. 118 at 5). Similar to the Fee Class, Defendants again contend that Plaintiffs cannot satisfy all of the requirements of Rule 23(a). Specifically, Defendants contend that Plaintiffs cannot prove causation on a class-wide basis, thereby defeating commonality and typicality. (Filing No. 123 at 28.) Additionally, Defendants contend that Bell is not an adequate representative. *Id.* at 33. Plaintiffs respond that Defendants' "common proof" arguments are invalid and Bell is an adequate representative. (Filing No. 136 at 13, 15.)

**1.    Common Proof**

As a threshold issue, Defendants contend that the proposed Money Market Fund Class cannot be certified because it would require individualized proof regarding which class members would have invested in a stable value fund, had it been offered, over the Money Market Fund.

Plaintiffs correctly note that the Seventh Circuit granted a petition for a Rule 23(f) appeal in certifying a class action with a claim virtually identical to Plaintiffs' Money Market Fund Claim in this case in *Abbott v. Lockheed Martin Corporation*, 725 F.3d 803 (7th Cir. 2013).

In *Abbott*, the defendants offered a stable value fund among the available investment options to plan participants. *Id.* at 805. Stable value funds "generally outperform money market funds, which invest exclusively in short-term securities. To provide the stability advertised in the name, SVFs are provided through "wrap" contracts with banks or insurance companies that guarantee the fund's principal and shield it from interest-rate volatility." *Id.* at 806. However, in *Abbott*, the defendant's stable value fund heavily invested in short-term money market investments, which resulted in a low rate of return, such that the stable value fund "did not beat inflation by a sufficient margin to provide a meaningful retirement asset." *Id.* The stable value fund at issue in *Abbott* was managed as a *de facto* money market fund, while this case concerns an explicit money market fund. Also similar to the present case, the *Abbott* plaintiffs proposed to limit the class definition to the Hueler FirstSource Universe Index (the "Hueler Index") which is an index that tracks the performance of stable value funds over time. *Id.* at 807. Using the Hueler Index as a benchmark for "how an average, prudently managed stable value fund would have performed throughout the class period, the plaintiffs reasoned that the Hueler Index offered a reasonable counterfactual estimate of how [] SVF would have performed if not for [] imprudence." *Id.* This approach allowed for the exclusion of anyone in the class who may have benefited from the plan's conduct. The district court denied the class based on this definition as "an improper attempt to use class certification to 'back door' a resolution of this contested issue [*i.e.*, the proper measure of loss] in [Plaintiffs'] favor." The Seventh Circuit reversed and remanded.

Defendants attempt to distinguish the *Abbott* case by distorting Plaintiffs' claim, stating that the claim does not allege that the Money Market Fund was imprudent for its type, as was argued in *Abbott*. ([Filing No. 123 at 26](#).) ("In their motion Plaintiffs continue to stop short of asserting the Money Market Fund should have been removed, instead asserting only that it was imprudent to retain the Money Market Fund 'while failing to investigate a stable value fund.'") Plaintiffs respond that this purported distinction is meaningless as the relevant type of investment is a capital preservation option, rather than a money market fund or a stable value fund. ([Filing No. 136 at 12](#).) The Court agrees. Moreover, the stable value fund in *Abbott* was structured as a money market fund and did not beat inflation. Thus, it did not provide meaningful retirement benefits.

> Plaintiffs allege that the SVF was an imprudent investment, full stop. They aim to show that the SVF was not structured to beat inflation, that it did not conform to its own Plan documents, and that Lockheed failed to alter the SVF's investment portfolio even after members of its own pension committee voiced concerns that the SVF was not structured to provide a suitable retirement asset. The fact that the SVF's investment mix apparently deviated from that of other, similarly named funds may be relevant evidence on which Plaintiffs will rely, but it does not exhaust their theory of imprudence.

*Abbott,* 725 F.3d at 811. Plaintiffs' Money Market Fund claim relies on the same index used in *Abbott* as a benchmark to support their theory that the Money Market Fund was an imprudent investment. Plaintiffs' Second Amended Complaint alleges that if Defendants had prudently "investigated a stable value fund for the Plan's capital preservation investment option, and weighed the documented benefits relative to the Money Market Fund, they would have removed the Money Market Fund and provided a stable value fund for that Plan investment option." ([Filing No. 87 at 84](#).) Additionally, the Second Amended Complaint alleges that the Money Market Fund has served as the Plan's single capital preservation option for over fourteen years. *Id.* at 34. Capital preservation options are conservative investment options in which the primary strategy is

to preserve the investor's principal growth with an investment return exceeding inflation. Yet, the Money Market Fund has not beaten inflation just as the stable value fund in *Abbott* did not beat inflation. This is precisely the type of imprudent management claim at issue in *Abbott* and is materially indistinguishable from the claim certified in that case.

There is, however, one distinction between the present case and *Abbott*. While the Hueler Index is referenced as a benchmark in Plaintiffs' Second Amended Complaint, it has not been included within the class definition as in *Abbott*. Defendants contend that there is no objective basis to exclude participants from the class who may have benefited from the Money Market Fund. (Filing No. 123 at 27-28.) Plaintiffs respond that the Money Market Fund underperformed the Hueler Index at all times, thus no participants would need to be excluded. (Filing No. 136 at 13.) Nevertheless, Plaintiffs respond that to the extent that the Court has reservations about the proposed definition, the Court may modify the definition to include a reference to the Hueler Index as was approved in *Abbott*. Although Plaintiffs appear to contend that there is merely a remote chance that participants who did not experience injury will be included in the class even without the Hueler Index addition in the class definition, the Court agrees that a modification is appropriate. Furthermore, inclusion of the Hueler Index in the class definition would also foreclose Defendants' contention that due to a multitude of investment goals and choices made by Plan participants, it would be impossible to determine on a class-wide basis which of the funds (the three funds the Plan offered plus Plaintiffs' additional proposed fund) that each participant would have invested in at a given time. The inclusion of the Hueler Index limits the alternative investment making the class more manageable. In fact, the Seventh Circuit held that such inclusion of the Hueler Index was a material factor in narrowing the class, distinguishing it from the broad class decertified in *Spano*.

Finally, we repeat that this class definition is considerably narrower than those at issue in *Spano*. Plaintiffs have taken care to limit the class to those Plan participants who invested in the SVF during the class period. Their reference to the Hueler Index is one reasonable way to exclude from the class any persons who did not experience injury. These details make all the difference.

*Abbott,* 725 F.3d at 814. Accordingly, the Court modifies the proposed class definition to include the Hueler Index as a benchmark. Should any participants' investment in the Money Market Fund exceed the Hueler Index, those participants will be excluded from the class based on the amended class definition.

### 2.  **Numerosity**

In their opening brief, Plaintiff's assert: "[i]f the average participant invested her entire balance in the Money Market Fund, the class would have well over 6,000 members in 2010 and 5,000 members in 2016. If somehow every participant in the Fund had invested $1 million, the class would have at least 450 members." (Filing No. 118 at 11.)  In response, Defendants contend that Plaintiffs have offered no proof that numerosity has been met, rather Plaintiffs resort to speculation that there must be at least 450 members.  (Filing No. 123 at 32.)  As noted previously, numerosity is generally met when there are at least 40 class members. *Gentry v. Floyd Cty.,* 313 F.R.D. 72, 77 (S.D. Ind. 2016).  Plaintiffs respond that "the Seventh Circuit has expressly approved a certification of a class nearly identical to the Money Market Fund Class", and that Defendants "urge the Court to ignore the common sense conclusion that at least 40 participants must have invested in the $450 million Money Market Fund." (Filing No. 136 at 1.)  Plaintiffs also note that Defendants' numerosity objection is frivolous, as Defendants' own expert shows that 12,569 participants invested in the Money Market Fund during the class period. *Id.* at n.3.  (Filing No. 124-7.)  Based on this expert, the Court finds numerosity has been met as there are significantly more than forty proposed class members.

### 3. **Commonality and Typicality**

Defendants contend that Plaintiffs cannot satisfy commonality and typicality because Plaintiffs cannot prove causation on a class-wide basis.  (Filing No. 128 at 28.)  "A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff."  *Kenseth v. Dean Health Plan, Inc.,* 610 F.3d 452, 464 (7th Cir. 2010). Specifically, Defendants argue that establishing that it was imprudent—*i.e.* a breach of fiduciary duty—for the Plan not to offer a stable value fund and that such decision caused a loss to every participant who invested in the Money Market Fund would require assuming that each participant would have made identical investment decisions in investing in the stable value fund over the Money Market Fund.  (Filing No. 123 at 28.)

Quoting *Spano*, Plaintiffs contend that commonality is satisfied because there are common questions regarding the management of the Money Market Fund that operate across the Plan, rather than at individual participant levels.  (Filing No. 118 at 11-12.)  "Rule 23(a)(2) does not demand that every member of the class have an identical claim.  It is enough that there be one or more common questions of law or fact[.]"  *Spano,* 633 F.3d at 585; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do[.]") (citations and internal quotation marks omitted). Moreover, Plaintiffs correctly note that the common questions at issue in the Money Market Fund Class, in the case at hand, are materially indistinguishable from the claim certified in *Abbott*.  (Filing No. 136 at 12.)  The Court agrees with Plaintiffs' characterization of Defendants' argument  against typicality in that Defendants are essentially arguing that because plan participants might have made different investment decisions dependent on investment strategies that individualized proof of

damages will be required. (Filing No. 123 at 30.) ("Given the fundamental differences between stable value funds and money market funds and individual investment philosophies, it is clear that Plan participants—and putative class members—would not all decide to make the same investments.") In any event, the Seventh Circuit has expressly held that varying damage amounts within a class will not alone defeat class certification.

> Although the extent of each class member's personal damages might vary, district judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts. . . . Our only point here is that the need for individual damages determinations does not, in and of itself, require denial of his motion for certification.

*Arreola v. Godinez,* 546 F.3d 788, 801 (7th Cir. 2008). Because there are common questions of law or fact regarding the Money Market Fund Class, particularly as it relates to a prudent alternative to the Money Market Fund—here, the Hueler Index—the Court finds that commonality is satisfied. At a minimum, the liability question will be resolved as to all class members pursuant to class treatment.

For the same reasons as the commonality analysis, typicality is satisfied. "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and her claims are based on the same legal theory." *Arreola,* 546 F.3d at 798. Defendants offer similar arguments against typicality as they raised against commonality. However, on typicality Defendants point specifically to excerpts from Bell's testimony. Bell testified that she preferred the most conservative fund available and that her investment philosophy may be different from other class members. (Filing No. 123-1 at 29, 67.) Additionally, Defendants offer the different investment approaches of two other class representatives. For example, Prokish testified that she took a lot of loans out of her 401 (k) plan and Hoffman described himself as "in it for the long haul" with regards to the funds he selected. (Filing No. 131-1 at 21; Filing No. 123-

[4 at 28-29](#).)  Due to the potential different investment approaches among class members, Defendants again contend that it cannot be assumed that Bell would have made the same investment decisions or invested in the same funds as all potential class members.  Defendants' contention that damages must be identical on a class-wide basis, and thus class representatives and putative class members must all have similar investment strategies for there to be typicality is misplaced.  Quoting the Supreme Court's decision in *General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147 (1982), the Seventh Circuit noted that commonality and typicality requirements tend to merge.  *Spano,* 633 F.3d at 586.  For typicality in an ERISA defined-contribution case, such as the one here, "there must be a congruence between the investments held by the named plaintiff and those held by members of the class he or she wishes to represent." *Id.* Defendants do not contend that the class representatives held different investments from members of the class he or she wishes to represent, rather Defendants incorrectly focus on common damages on a class-wide basis on how each participant would have reinvested their Money Market Funds.  Common damages on a class-wide basis is the incorrect standard.  Because the same course of conduct is at issue in the proposed class and the class representative held the same Money Market Fund investments as the other class members, typicality is satisfied.

### 4. **Adequacy**

Defendants contend that Bell is not an adequate representative of the Money Market Fund Class because she testified that she was unaware that she was bringing a Money Market Fund claim and that she also did not know if she would have invested in a stable value fund over the Money Market Fund.  ([Filing No. 123 at 33](#).)  Defendants argue that Bell has effectively abdicated her role to Plaintiffs' counsel, based on her lack of understanding about the Money Market Fund, an impermissible and inappropriate use of the class action device.  Plaintiffs respond that

Defendants' characterization of Bell's testimony is inaccurate, and that Bell's inability to recognize the Money Market Fund claim during her deposition was due to defense counsel's inaccurate description. (Filing No. 136 at 15-16.)

The Court agrees with Defendants in that Bell is not an adequate representative. "A representative plaintiff acts as fiduciary for the others." *Crawford v. Equifax Payment Servs., Inc.,* 201 F.3d 877, 880 (7th Cir. 2000). While Bell had a basic understanding of the Fee Class, she failed to show the same basic understanding with regards to the Money Market Fund Class. Bell could not articulate a minimal high level understanding of the Money Market Fund Claim and repeatedly stated that she relies on her counsel when questioned about that claim. (Filing No. 123-1 at 44-45, 47-48.) Moreover when asked what the lawsuit is about, Bell referred specifically to the "high fees" in the Complaint and that any knowledge regarding the Money Market Fund was "only through their counsel". *Id.* at 47. As noted previously, the Court finds that Bell does not have a conflict of interest with regards to her representation of the class (based on her investment strategy) for typicality purposes; however, there are serious deficiencies regarding her adequacy to serve as a class representative due to her overall lack of understanding of the Money Market Fund Class. The Court finds Plaintiffs' offer of Bell's declaration, a document likely prepared by her attorneys, that she understands the nature of her claims unpersuasive. (Filing No. 118-1.) Bell does not understand the basic facts underlying the Money Market Fund Claim nor could she answer whether it was in fact at all alleged in the Complaint in fulfilling adequacy requirements. *See Kraft Foods Glob., Inc.,* 251 F.R.D. at 350-51. Nevertheless, Plaintiffs offer Hoffman as a substitution for Bell should the Court find Bell inadequate to represent the class. (Filing No. 136 at 16.) In R*andall v. Rolls Royce Corp.,* the Seventh Circuit recognized substitution of the class

representative where the original representative was inadequate.  637 F.3d 818, 826-27 (7th Cir. 2011).

Substitution is proper because Hoffman is a typical and adequate representative because he also invested in the Money Market Fund throughout the class period.  (Filing No. 124-8.) Whereas Bell failed on adequacy grounds, Hoffman exhibited extensive knowledge of the Money Market Fund allegations contained in the Complaint when questioned during his deposition. (Filing No. 136-2 at 16.)  Accordingly, the Court substitutes Hoffman as the class representative for the Money Market Fund Class.  As noted previously, adequacy of counsel is not in dispute and Schlichter Bogard & Denton, LLP is qualified to proceed as class counsel.

### 5.      Rule 23(b)

Having concluded that the requirements of Rule 23(a) are satisfied, the Court turns to whether the Money Market Fund Class may be certified under one of Rule 23 (b)'s subsections. Under Rule 23(b)(1) a non-opt-out class action may be certified where individual actions would create a risk of (A) inconsistent or varying adjudications would establish incompatible standards of conduct for the party opposing the class, or (B) would be dispositive of the interests of the other members of the class or substantially impair or impede other class members' ability to protect their interests.  Fed. R. Civ. P. 23(b)(1).  Rule 23(b)(3) applies if the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed R. Civ. P. 23(b)(3).

With regards to Rule 23(b)(1), Defendants again hang their hat on previously rejected arguments related to alleged divergent investment strategies and causation issues.  (Filing No. 123 at 35.)  ("Given the divergent investment strategies and preferences that exist among participants,

there is no reason to assume that an adjudication of one person's claim 'as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'")  Plaintiffs note that other courts have held that ERISA breach of fiduciary claims "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class[.]"  ([Filing No. 136 at 16](#)) (quoting *In re Shcering Plough Corp. ERISA Litig.,* 589 F.3d 585, 604 (3rd Cir. 2009) and collecting cases). Additionally, on remand from the Seventh Circuit in *Spano*, the district court granted the class certification under Rule 23(b)(1).  294 F.R.D. at 126-27.  The Committee Notes to Rule 23(b)(1)(B) provide examples of situations envisioned by that subsection, which is applicable in this case.  Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 Am., sub. (b)(1)(B) ("The same reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.").

The Court concludes that certification is appropriate under both Rule 23(b)(1)(A) and (b)(1)(B).  Defendants' actions with regards to the Money Market Fund took place on a plan-wide basis.  For this reason, there is a risk of incompatible standards of conduct for Defendants if individual participants pursue their own adjudications over the alleged imprudent management of the Money Market Fund, which also could substantially impair or impede the ability of other participants' ability to protect their interests.  Because certification under Rule 23(b)(1) is mandatory where its requirements are satisfied, it controls over Rule 23 (b)(3).  *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 841, 119 S. Ct. 2295, 2312, 144 L. Ed. 2d 715 (1999).  Thus, the Court need not address Plaintiffs' alternative request for certification under Rule 23(b)(3).  In any event, as

discussed in detail above in the Rule 23(a) analysis, common issues of law and fact predominate which would make certification under Rule 23(b)(3) appropriate as well.

## IV.  CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Class Certification, (Filing No. 117), and appointment of class representative and counsel is **GRANTED in part** and **DENIED in part**. It is **DENIED** as to the Administrative Fee and Investment Management Fee Class, and **GRANTED** as to the Money Market Fund Class.  Additionally, Defendants' Motion for Leave to File a Supplemental Brief in Support of Their Opposition to Plaintiffs' Motion for Class Certification, (Filing No. 189), is **GRANTED**.  Plaintiffs' Motion for Leave to Respond to Defendants' Proposed Supplemental Brief (Filing No. 201) concerning class certification is **GRANTED**.  The Court **CERTIFIES** the following class, which it has modified:

> All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who, from December 29, 2009 through the date of judgment, excluding the Defendants, invested in the Vanguard Money Market Fund and whose investment in the Vanguard Money Market Fund underperformed relative to the Hueler Index.

Further, the Court **APPOINTS** John Hoffman as representative of the Money Market Fund Class and Schlichter, Bogard & Denton, LLP as class counsel.

**SO ORDERED.**

Date:  9/14/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alexander Braitberg
SCHLICTHER BOGARD DENTON LLP
abraitberg@uselaws.com

Shannon M. Callahan
SEYFARTH SHAW LLP
scallahan@seyfarth.com

Troy A. Doles
SCHLICHTER, BOGARD & DENTON, LLP
tdoles@uselaws.com

Ada W. Dolph
SEYFARTH SHAW LLP (Chicago)
adolph@seyfarth.com

Heather Lea
SCHLICHTER, BOGARD & DENTON, LLP
hlea@uselaws.com

Laura H. McNally
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103

Ian Hugh Morrison
SEYFARTH SHAW LLP (Chicago)
imorrison@seyfarth.com

Jason Priebe
SEYFARTH SHAW LLP
jpriebe@seyfarth.com

Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON, LLP
jschlichter@uselaws.com

Andrew D. Schlichter
SCHLICHTER BOGARD & DENTON, LLP
aschlichter@uselaws.com

Aaron E. Schwartz

SCHLICHTER BOGARD & DENTON, LLP
aschwartz@uselaws.com

Sean Soyars
SCHLICHTER BOGARD & DENTON LLP
ssoyars@uselaws.com

Kurt C. Struckhoff
SCHLICHTER, BOGARD & DENTON, LLP
kstruckhoff@uselaws.com

Michael A. Wolff
SCHLICHTER, BOGARD & DENTON, LLP
mwolff@uselaws.com