# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MARY BELL, JANICE GRIDER, CINDY PROKISH, individually and as representatives of a class of similarly situated persons of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan), JOHN HOFFMAN, and PAMELA LEINONEN, <br><br> Plaintiffs, <br><br> v. <br><br> PENSION COMMITTEE OF ATH HOLDING COMPANY, LLC, ATH HOLDING COMPANY, LLC, and BOARD OF DIRECTORS OF ATH HOLDING COMPANY, LLC, <br><br> Defendants. <br><br> VANGUARD GROUP, INC., <br><br> Interested Party. | Case No. 1:15-cv-02062-TWP-MPB |

## ENTRY ON PARTIES' MOTIONS TO MODIFY THE CLASS CERTIFICATION ORDER

This matter is before the Court on opposing motions to modify the class certified by this Court in its September 14, 2018 Entry on Pending Motions. (Filing No. 215 at 23.) Plaintiffs Mary Bell ("Bell"), Janice Grider, Cindy Prokish, John Hoffman ("Hoffman"), and Pamela Leinonen ("Leinonen") (collectively, "Plaintiffs") filed Plaintiffs' Motion To Partially Reconsider Or Modify Class Certification Order (Filing No. 230), and Defendants Pension Committee of ATH Holding Company, LLC ("the Pension Committee"), ATH Holding Company, LLC ("ATH"), and Board of Directors of ATH Holding Company, LLC (collectively, "Defendants") filed a Motion to Amend Order Certifying Money Market Fund Class. (Filing No. 232.) In its September 14, 2018 Entry (the "September 14th Order"), the Court granted Plaintiffs' motion to certify one of its

proposed classes—the Money Market Fund Class—but denied their motion to certify the other proposed class—the Administrative Fee and Investment Management Fee Class. ([Filing No. 215](#).) Plaintiffs seek to modify the class definition they earlier asserted (*see* [Filing No. 117](#)) in hopes that the Court will certify both classes under the new definition. ([Filing No. 231](#).) Defendants ask the Court to amend the September 14th Order and vacate its certification of the Money Market Fund Class because none of the named Plaintiffs adequately represent the class. ([Filing No. 233](#).)

For the reasons set forth below, Plaintiffs' Motion to Partially Reconsider or Modify Class Certification Order is **granted** and Defendants' Motion to Amend Order Certifying Money Market Fund Class is **denied**.

## I. BACKGROUND

The facts of this case are set forth in detail in the September 14th, Order and for the most part are repeated in this Entry. Defendants are fiduciaries of the Anthem 401(k) Plan ("the Plan").[1] The Plan is a defined contribution plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1002(34). The Plan is sponsored by ATH and, as of December 31, 2014, is one of the largest 401(k) plans in the United States, with over $5.1 billion in total assets. It provides retirement income for employees of ATH and any direct or indirect subsidiary of the company that has been offered the Plan. The retirement benefits are limited to the value of an employee's account, and depends upon employee and employer contributions, as well as investment options' fees and expenses. Plaintiffs are current and former participants of the Plan. The Pension Committee is appointed by the Board of Directors of ATH and serve as the Plan's administrator and they are responsible for the control, management, and administration of the Plan's investment options.

---

[1] Before December 2, 2014, the Plan was known as the WellPoint 401(k) Retirement Savings Plan.

2

Defendants select and determine the available investment options offered in the Plan. (Filing No. 87 at 7.) These decisions are made at the Plan level; therefore, the available options and the associated expenses are the same for all Plan participants. The Plan offers three tiers of investment options: Tier 1, the Target Date Funds; Tier 2, the Core Funds; and Tier 3, the Vanguard Brokerage Option. (Filing No. 123 at 10.) The Plan's investment options vary based on risk and return profiles. Vanguard Group, Inc. ("Vanguard") is the Plan's recordkeeper, and the Plan pays Vanguard investment management fees which are deducted from participants' accounts on a pro rata basis, based on each fund's "expense ratio"—a percentage of a fund's assets charged for "expenses that reduce the rate of return of the investment option." (Filing No. 38-3 at 6.) Until 2013, Defendants compensated Vanguard for its administrative services (primarily recordkeeping) through revenue sharing payments from the Plan's mutual funds, paid through a portion of the Plan's mutual funds expense ratios. (Filing No. 87 at 30.) Effective July 22, 2013, Defendants charged a flat annual recordkeeping fee of $42.00 to each participant's account with a balance of over $1,000.00. (Filing No. 38-4 at 6.)

In the operative Second Amended Complaint, Plaintiffs allege that Defendants breached their fiduciary duties by causing Plaintiffs' retirement plan to pay excessive investment and management fees to Vanguard, and also invested in an imprudent money market fund, resulting in tens of millions of dollars of Plan losses. (*See* Filing No. 87 at 82-85.) Plaintiffs summarize their allegations against Defendants as follows: (1) Defendants provided investment options charging unreasonable management fees compared to available superior institutional investment products; (2) Defendants failed to monitor and control the excessive administrative expenses paid to Vanguard; (3) Defendants provided the Money Market Fund as the Plan's sole capital preservation

3

option even though it did not provide any meaningful retirement benefits; and (4) Defendants failed to prudently and regularly monitor the Money Market Fund. (Filing No. 118 at 4-5.)

Plaintiffs initially sought certification of the following classes:

**Administrative Fee and Investment Management Fee Class**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) from December 29, 2009 through the date of judgment, excluding the Defendants.

**Money Market Fund Class**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who, from December 29, 2009 through the date of judgment, excluding the Defendants, invested in the Vanguard Money Market Fund.

*Id.* at 5. The Court certified the Money Market Fund Class but denied Plaintiffs' motion to certify the Administrative Fee and Investment Management Fee Class because that class failed to satisfy Federal Rule of Civil Procedure 23(a)'s typicality requirement. (Filing No. 215.)

Plaintiffs now seek certification of the following subclasses to the Administrative Fee and Investment Management Fee Class:

**Flat Fee Subclass**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who had an account balance greater than $1,000.00 at any time from July 22, 2013 through the date of judgment, excluding the Defendants.

**Revenue Sharing Subclass**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) whose accounts held one or more investments that made revenue sharing payments to The Vanguard Group at any time from December 29, 2009 through July 21, 2013, excluding the Defendants.

Or, alternatively:

All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who had a reduction in the value of their account balance at a rate of more than $30.00 per year due to revenue sharing payments to The Vanguard Group at any time from December 29, 2009 through July 21, 2013, excluding the Defendants.

([Filing No. 231 at 3-4](#).) Defendants ask the Court to amend the September 14th Order by decertifying the Money Market Fund Class. ([Filing No. 233](#).)

## II. LEGAL STANDARD

Because no final judgment has issued in this case, the Court views both motions, which ask the Court to amend the September 14th Order, as motions to reconsider pursuant to Federal Rule of Civil Procedure 54(b). A Rule 54(b) motion is to be used "where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted). Additionally, "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (citation and quotation marks omitted).

Because this is a class action, the Court balances the above standard with Rule 23(c)(1)(C), which states, "[a]n order that grants or denies class certification may be altered or amended before final judgment." "[A] district court has broad discretion to determine whether certification of a class is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Under Rule 23(c)(1)(C), the court retains authority to modify or vacate a class certification at any time prior to final judgment. "[T]he district court has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed consistent

with Rule 23's requirements." *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

"[A] favorable class determination by the court is not cast in stone. If the certification of the class is later deemed to be improvident, the court may decertify, subclassify, alter the certification, or permit intervention." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F. 2d 890, 896 (7th Cir. 1981) (citations omitted); *see also Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003) ("the court's initial certification of a class 'is inherently tentative'") (citation omitted).

> Classes are certified early in a suit. Fed. R. Civ. P. 23(c)(1)(A). All certifications are tentative. Fed. R. Civ. P. 23(c)(1)(C). If the evidence calls into questions the propriety of defining a class in a particular way, then the definition must be modified or subclasses certified. A class defined early in a suit cannot justify adjudicating hypothetical issues rather than determining the legality of what actually happens.

*Fonder v. Sheriff of Kankakee Cty.*, 823 F.3d 1144, 1147 (7th Cir. 2016).

### III. DISCUSSION

**A.     Plaintiffs' Motion**

The Court previously denied Plaintiffs' motion to certify the "Fee Class" because the representative plaintiffs were not typical of the proposed class. (Filing No. 215 at 10.) The Court identified two main problems with the proposed fee class. First, the proposed class was confused by "a time period covering two different fee structures within the class." *Id.* at 9. From 2010 to July 2013, the Plan paid administrative and expense fees to Vanguard via revenue sharing, but in July 2013, the Plan switched to a flat fee of $42.00 per participant with an account balance over $1,000.00. Plaintiffs argued the $42.00 flat fee is excessive because the market rate benchmark was $30.00. Second, depending on a putative class member's investment, he may have been paying below the suggested market rate of $30.00 under the revenue sharing free structure in place

before September 2013. Indeed, 51% of the unnamed class members did not pay more than the market rate of $30.00 from 2009 to 2013, before the Plan shifted to a flat fee structure. *Id.* And those members with an account balance under $1,000.00 do not pay recordkeeping fees at all under the flat fee structure implemented in 2013, yet they were included in the proposed class.

Plaintiffs seek to cure these deficiencies by narrowing their proposed class. The Plaintiffs seek to certify subclasses, dividing their initial proposed class temporally—one class would cover the revenue sharing fee structure (the "Revenue Sharing Fee Subclass"), from December 29, 2009 to July 22, 2013, and the other would cover the flat fee structure (the "Flat Fee Subclass"), from July 22, 2013 to the date of judgment. ([Filing No. 231 at 3-4](#).) Plaintiffs have narrowed the proposed Flat Fee Subclass to only those participants and beneficiaries who had an account balance greater than $1,000.00, since everyone else did not pay fees at all. And for the Revenue Sharing Fee Subclass, Plaintiffs suggest that if the Court still does not find it satisfies the typicality requirement because some participants paid lower than the market rate of $30.00 under that scheme, the Court could narrow the class to include only those participants and beneficiaries "who had a reduction in the value of their account balance at a rate of more than $30.00 per year due to revenue sharing payments." *Id.* However, Plaintiffs do not believe the Court must mandate the last limitation because "under the Plaintiffs' theory of the case, participants were injured—even if they paid less than the $30 benchmark—due to Defendants' failure to obtain *rebates* of the excessive revenue sharing payments to Vanguard." *Id.* at 5 (emphasis in original).

Defendants argue Plaintiffs are not entitled to a modification of the September 14th Order because they could have proposed these same subclasses in their initial Motion for Class Certification. ([Filing No. 237 at 5-8](#).) They contend some of the Plaintiffs' arguments, such as the proposal that participants who paid less than $30.00 in fees under the revenue sharing structure

7

were injured because they did not receive a rebate for excessive fees, were already raised and did not move the Court. *Id.* at 7. Defendants also argue that the new proposed subclasses still do not satisfy the typicality requirement. *Id.* at 8.

The Plaintiffs' motion clearly attempts to respond to the September 14th Order by curing some of the problems the Court pointed out with its proposed Administrative Fee and Investment Management Fees Class. Although Plaintiffs have not identified new evidence or overlooked precedent that cast doubt on the September 14th Order, Rule 23(c)(1)(C) allows the Court to amend or alter an order that grants or denies class certification. The Court previously found that the proposed class satisfied three of the four Rule 23(a) prerequisites, but found the proposed definition was overbroad concerning typicality. Allowing Plaintiffs the opportunity to cure an intra-class conflict is permissible. *See Abbott v. Lockheed Martin Corp.*, 725 F. 3d 803, 813 (7th Cir. 2013). Moreover, the Court retains authority to modify or vacate a class certification at any time prior to final judgment. Accordingly, the Court will determine whether the new proposed subclasses satisfy the typicality requirement.

To certify a class, Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). The Seventh Circuit considered typicality in the context of a defined-contribution plan—the type of plan at issue here—noting "that there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify

allowing the named party to litigate on behalf of the group." *Spano*, 633 F.3d 574, 586 (7th Cir. 2011).

### 1. **Proposed Flat Fee Subclass**

Defendants argue the proposed Flat Fee Subclass does not satisfy Rule 23(a)(3)'s typicality requirement because "there are many participants in the proposed Flat Fee subclass (approximately 56%) who prefer keeping the bundled fee structure because they would have paid *less* had the Plan done so." (Filing No. 237 at 11 (emphasis in original).) According to defendants, "those participants *would not have preferred* the Plan's flat fee structure of $42.00 per participant because they would have paid less under the Plan's revenue sharing structure." *Id.* (emphasis in original.) But, as Plaintiffs point out, "[r]egardless of whether an individual would prefer a different fee structure altogether, once the structure was changed, all participants who paid the flat fee would prefer to be charged $30 (or less) per year rather than $42 per year." (Filing No. 249 at 8.) The Plaintiffs' claim is not doomed because there is another fee structure that a majority of putative class members might have preferred. Plaintiffs argue that under the fee structure the Plan actually imposed, every member of the putative class, including the representative plaintiffs, would have been better off paying $30.00, a fee they view as reasonable, instead of $42.00, a fee they view as unreasonable. Hypothetical fee arrangements that the Plan could have, but chose not to use starting in 2013, are irrelevant to the Plaintiffs' claims.

After June 22, 2013, every participant with an account balance over $1,000.00 paid a flat recordkeeping fee of $42.00 regardless of which funds they invested in. This group of participants includes the representative plaintiffs and all members of the proposed subclass, which is now limited to those participants with an account balance of over $1,000.00. Because the representative plaintiffs' alleged injuries arise out of the same conduct as the class at large, and because their

9

claims are based on the same legal theories, their claims are typical of the class. *Rosario* at 1018. Plaintiffs Bell, Hoffman, and Leinonen are representative plaintiffs with claims typical of the proposed Flat Fee Subclass.

### 2. **Proposed Revenue Sharing Subclass**

Plaintiffs seek to certify a subclass covering the period from December 29, 2009 through July 21, 2013, when the Plan used a revenue sharing fee structure rather than a flat fee structure, contending the fees paid under that structure were unreasonable as well. Defendants argue that, under the revenue sharing fee structure, those participants who had smaller account balances paid less than the $30.00 benchmark Plaintiffs argue was a reasonable fee, and thus suffered no harm at all during the revenue sharing period. ([Filing No. 237 at 12](#).) Plaintiffs assert those participants are nevertheless appropriate members of the class because they suffered harm when the Plan failed to demand rebates from Vanguard, which would have been distributed pro rata to participants. ([Filing No. 231 at 6-7](#).) Plaintiffs allege the Plan's failure to demand these rebates was a breach of Defendants' fiduciary duty, and all participants were injured by this breach because all of them would have received a rebate in proportion to the recordkeeping fee they had paid. ([Filing No. 87 at 33](#).)

Defendants argue that because Vanguard funds did not provide rebates "as a matter of policy," ([Filing No. 222-53 at 12](#)), the Court should not accept the Plaintiffs' argument as a basis for modifying the September 14th Order. Plaintiffs argue that whether rebates were available to participants is a merits issue inappropriate for consideration on certification. ([Filing No. 249 at 9](#).) They also argue that "[w]hatever Vanguard's official 'policy,' the Plan's $5 billion asset size places it among the very largest defined contribution plans in the United States, and afforded

10

Defendants tremendous leverage to demand an exception to Vanguard's supposed policy, lest Anthem decide to take its business elsewhere." *Id.*

The Plaintiffs may be correct that Anthem's size would be sufficient leverage to convince a finder of fact that rebates were available to participants. But that does not solve their typicality problem. Plaintiffs' proposed Revenue Sharing Subclass divides into two groups: participants whose claims arise because the Plan paid unreasonable fees to Vanguard, and participants whose claims arise because the Plan failed to obtain rebates for the excessive fees it paid to Vanguard. The named plaintiffs are typical of only one group—the participants whose claims arise because the Plan paid unreasonable fees to Vanguard. Bell, Hoffman, and Leinonen each "paid more than $30 in recordkeeping fees while the revenue sharing structure was in place," and thus are not typical of participants whose claims arise solely because the Plan failed to obtain rebates from Vanguard. (Filing No. 231 at 7-8.)

Plaintiffs propose an alternative subclass for the revenue-sharing period, one that only includes participants "who had a reduction in the value of their account balance at a rate of more than $30.00 per year." *Id.* at 4. Defendants do not contest the certification of this alternative subclass, they only ask that the Court narrow its definition to adjust the benchmark to $35.00 per year, the amount Plaintiffs' expert said was a reasonable fee from 2010-2012. (Filing No. 237 at 12-13.) The Court agrees $35.00 is the appropriate number supported by designated evidence. (Filing No. 222-49 at 35.) Defendants also urge the Court to "begin the class when the Plan could have switched to a flat fee." (Filing No. 237 at 13.) The determination of that date is a question common to all participants and thus does not affect the Court's typicality analysis.

Plaintiffs' Motion to Partially Reconsider or Modify Class Certification Order is **granted**. The Court certifies the Administrative Fee and Investment Management Fee Class with the following subclasses:

**Flat Fee Subclass**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who had an account balance greater than $1,000.00 at any time from July 22, 2013 through the date of judgment, excluding the Defendants.

**Revenue Sharing Subclass**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who had a reduction in the value of their account balance at a rate of more than $35.00 per year due to revenue sharing payments to The Vanguard Group at any time from December 29, 2009 through July 21, 2013, excluding the Defendants.

**B.** **Defendants' Motion**

The September 14th Order found that Bell was not an adequate class representative for the Money Market Fund Class but that Hoffman was "because he also invested in the Money Market Fund throughout the class period" and he "exhibited extensive knowledge of the Money Market Fund allegations contained in the Complaint when questioned during his deposition." (Filing No. 215 at 21.) Plaintiffs had initially asserted Bell as the adequate class representative, but when Defendants argued she was inadequate, Plaintiffs replied that "[t]o the extent the Court has any reservations about Plaintiff Bell's adequacy to represent this class, Plaintiff Hoffman would also be an appropriate representative of this class." (Filing No. 136 at 16.) Contending they did not have an opportunity to respond to that assertion because it came in Plaintiffs' reply brief, Defendants now urge the Court to reconsider its determination that Hoffman is an adequate class representative. (Filing No. 233 at 5.)

Defendants' sole argument is that because Hoffman understood in 2009 that the Money Market Fund would not provide growth, his claims are barred by ERISA's statute of limitations,

which precludes breach of fiduciary duty claims filed more than three years after a plaintiff has knowledge of the facts that constituted the alleged breach. 29 U.S.C. § 1113. Defendants argue that, if the Court grants summary judgment on this statute of limitations argument, some members of the class who did not have knowledge that the fund would not provide growth three years before this action was filed would be prejudiced. ([Filing No. 233 at 8](#).) They also argue that no other named Plaintiff can adequately represent the Money Market Fund Class. *Id.*

Plaintiffs respond with three arguments. First, Defendants seek reconsideration of the Court's ruling as to the types of facts required to establish actual knowledge under ERISA, but do not meet the standard for such a motion. Second, Defendants' assertion of this statute of limitations defense against Hoffman does not make him unrepresentative because Defendants assert that same defense against the class as a whole. And third, neither Hoffman nor any other member of the class had "actual knowledge" of Defendants' breach of fiduciary duty. ([Filing No. 240 at 1](#).)

The Court discussed Defendants' statute of limitations defense in its Entry on Motion to Dismiss. ([Filing No. 80](#).) In that Entry, the Court generally found that although Plaintiffs had some knowledge of the Plan's operation through disclosures the Plan provided, they did not have actual knowledge of the facts that would allow them to determine if Defendants had breached their fiduciary duty. For example, the Court determined that although the Plan disclosed its investment option fees to all participants, it did not "provide participants with actual knowledge that Defendants could have provided a lower cost alternative, nor [did] it apprise participants of the process Defendants undertook to decide the high-cost versions of those investments." *Id.* at 15.

The same principles apply here. Defendants impute a very general knowledge to Hoffman: that he knew the Money Market Fund "was expected to generate and generated only microscopic returns for consecutive years" and "did not provide meaningful retirement income to Plan

13

participants." (Filing No. 233 at 7.) But the Plaintiffs allege a specific tort, that the Defendants breached their fiduciary duty by charging unreasonable management fees compared to available superior institutional investment products and failing to monitor and control the excessive administrative expenses paid to Vanguard, among other things. Hoffman's belief that the Plan would not grow his investment does not equate to actual knowledge of the specific wrongdoing Plaintiffs allege in this case. The Court will not disqualify Hoffman as an adequate class representative based on this affirmative defense, which, at this time, is speculative. Defendants' Motion to Amend or Alter Order Certifying Money Market Fund Class is **denied**.

## IV. <u>CONCLUSION</u>

For the reasons state herein, Plaintiffs' Motion to Partially Reconsider or Modify Class Certification Order (Filing No. 230) is **GRANTED**. Defendants' Motion to Amend Order Certifying Money Market Fund Class (Filing No. 232) is **DENIED**.

**SO ORDERED.**

Date: 1/24/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alexander L. Braitberg
SCHLICTHER BOGARD DENTON LLP
abraitberg@uselaws.com

Troy A. Doles
SCHLICHTER, BOGARD & DENTON, LLP
tdoles@uselaws.com

Ada W. Dolph
SEYFARTH SHAW LLP (Chicago)
adolph@seyfarth.com

Heather Lea
SCHLICHTER, BOGARD & DENTON, LLP
hlea@uselaws.com

Laura Hughes McNally
MORGAN, LEWIS & BOCKIUS LLP
laura.mcnally@morganlewis.com

Ian Hugh Morrison
SEYFARTH SHAW LLP (Chicago)
imorrison@seyfarth.com

Jason Priebe
SEYFARTH SHAW LLP
jpriebe@seyfarth.com

Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON, LLP
jschlichter@uselaws.com

Andrew D. Schlichter
SCHLICHTER BOGARD & DENTON, LLP
aschlichter@uselaws.com

Sean Soyars
SCHLICHTER BOGARD & DENTON LLP
ssoyars@uselaws.com

Kurt C. Struckhoff
SCHLICHTER, BOGARD & DENTON, LLP
kstruckhoff@uselaws.com

Megan E. Troy
SEYFARTH SHAW LLP
mtroy@seyfarth.com

Michael A. Wolff
SCHLICHTER, BOGARD & DENTON, LLP
mwolff@uselaws.com