| | | |
|---|---|---|
| MARY BELL, JANICE GRIDER, CINDY PROKISH, JOHN HOFFMAN, and PAMELA LEINONEN individually and as representatives of a class of similarly situated persons of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan), | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:15-cv-02062-TWP-MPB |
| PENSION COMMITTEE OF ATH HOLDING COMPANY, LLC, ATH HOLDING COMPANY, LLC, and BOARD OF DIRECTORS OF ATH HOLDING COMPANY, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| VANGUARD GROUP, INC., | ) ) | |
| Interested Party. | ) | |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Pension Committee of ATH Holding Company, LLC ("the Pension Committee"), ATH Holding Company, LLC ("ATH"), and Board of Directors of ATH Holding Company, LLC ("the Board") (collectively, "Defendants"). (Filing No. 218.) The Second Amended Complaint filed by Plaintiffs Mary Bell ("Bell"), Janice Grider, Cindy Prokish, John Hoffman ("Hoffman"), and Pamela Leinonen (collectively, "Plaintiffs"), asserts class action claims for Counts I-IV, breach of duties; Count V, failure to monitor fiduciaries; and Count VI, refusal to supply requested information. (Filing No. 87.) The Defendants contend that

they are entitled to judgment as a matter of law on all claims. For the following reasons, the Court **denies** Defendants' Motion for Summary Judgment.

# I.    BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Plaintiffs as the non-moving party. *See Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Defendants are fiduciaries of the Anthem 401(k) Plan ("the Plan").[1] The Plan is a defined contribution plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1002(34). The Plan is sponsored by ATH and, as of December 31, 2014, is one of the largest 401(k) plans in the United States, with over $5.1 billion in total assets. It provides retirement income for employees of ATH and any direct or indirect subsidiary of the company that has been offered the Plan. The retirement benefits are limited to the value of an employee's account, which depends upon employee and employer contributions, as well as investment options' fees and expenses. Plaintiffs are current and former participants of the Plan. The Pension Committee is appointed by the Board and serves as the Plan's administrator which entails responsibility for the control, management, and administration of the Plan's investment options.

Defendants select and determine the available investment options offered in the Plan. ([Filing No. 87 at 7](.)) These decisions are made at the Plan level; therefore, the available options and the associated expenses are the same for all Plan participants. The Plan offers three tiers of investment options: Tier 1, the Target Date Funds; Tier 2, the Core Funds; and Tier 3, the Vanguard

---

[1] Before December 2, 2014, the Plan was known as the WellPoint 401(k) Retirement Savings Plan.

Brokerage Option.  (Filing No. 123 at 10.)  The Plan's investment options vary based on risk and return profiles. Vanguard Group, Inc. ("Vanguard") is the Plan's recordkeeper, and the Plan pays Vanguard investment management fees which are deducted from participants' accounts on a pro rata basis, based on each fund's "expense ratio"—a percentage of a fund's assets charged for "expenses that reduce the rate of return of the investment option." (Filing No. 38-3 at 6.) Until 2013, Defendants compensated Vanguard for its administrative services (primarily recordkeeping) through revenue sharing payments from the Plan's mutual funds, paid through a portion of the Plan's mutual funds expense ratios.  (Filing No. 87 at 30.)  Effective July 22, 2013, Defendants charged a flat annual recordkeeping fee of $42.00 to each participant's account with a balance of over $1,000.00.  (Filing No. 38-4 at 6.)

On March 23, 2017, this Court denied in part and granted in part Defendants' Motion to Dismiss.  (Filing No. 80 at 2.)  The Court dismissed Plaintiffs' claim regarding the Vanguard Prime Money Market Fund (the "Money Market Fund") without prejudice. Plaintiffs then filed the operative Second Amended Complaint, which provides additional facts supporting the Money Market Fund claim.  (See Filing No. 87 at 82-85.)  Plaintiffs allege that Defendants breached their fiduciary duties by causing Plaintiffs' retirement plan to pay excessive investment and management fees to Vanguard, and also invested in an imprudent money market fund, resulting in tens of millions of dollars of Plan losses.  In their Second Amended Complaint, Plaintiffs made the following claims against Defendants: (1) Defendants provided investment options charging unreasonable management fees compared to available superior institutional investment products (Count I); (2) Defendants failed to monitor and control the excessive administrative expenses paid to Vanguard (Count II); (3) Defendants provided the Money Market Fund as the Plan's sole capital preservation option even though it did not provide any meaningful retirement benefits (Count III);

(4) Defendants failed to prudently and regularly monitor the Money Market Fund (Count IV); (5) Defendant ATH breached its fiduciary duty by failing to monitor the Pension Committee, the entity to which it delegated its fiduciary duty (Count V); and (6) Defendant Pension Committee violated ERISA document production requirements by failing to timely provide Plaintiffs with requested material (Count VI). (Filing No. 87 at 78-92.)

Plaintiffs initially sought certification of the following classes:

**Administrative Fee and Investment Management Fee Class**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) from December 29, 2009 through the date of judgment, excluding the Defendants.

**Money Market Fund Class**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who, from December 29, 2009 through the date of judgment, excluding the Defendants, invested in the Vanguard Money Market Fund.

*Id.* at 5. The Court certified the Money Market Fund Class but denied Plaintiffs' motion to certify the Administrative Fee and Investment Management Fee Class because that class failed to satisfy Federal Rule of Civil Procedure 23(a)'s typicality requirement. (Filing No. 215.)

On January 24, 2019, the Court granted the Plaintiffs' Motion to Modify the Class Certification Order, certifying the Administrative Fee and Investment Management Fee Class with the following subclasses:

**Flat Fee Subclass**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who had an account balance greater than $1,000.00 at any time from July 22, 2013 through the date of judgment, excluding the Defendants.

**Revenue Sharing Subclass**
All participants and beneficiaries of the Anthem 401(k) Plan (formerly the WellPoint 401(k) Retirement Savings Plan) who had a reduction in the value of their account balance at a rate of more than $35.00 per year due to revenue sharing

payments to The Vanguard Group at any time from December 29, 2009 through July 21, 2013, excluding the Defendants.

([Filing No. 347](#).) On September 26, 2018, Defendants moved for summary judgment on all claims.

([Filing No. 218](#).) More facts will follow below as necessary.

## II.     LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S.Ct. 1348 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.    DISCUSSION

Defendants assert four arguments in their motion for summary judgment: (1) Plaintiffs' money market fund claims are time-barred and legally and factually baseless; (2) Plaintiffs' excessive fee claims are time-barred and legally and factually baseless; (3) Plaintiffs' failure to monitor claim falls within their breach of fiduciary duty claims; and (4) Bell's document request claim fails as a matter of law because there is no evidence that the request was ever received.

## A.    Money Market Fund Claims

The Plaintiffs allege Defendants breached their fiduciary duty under ERISA by "Providing the Imprudent and Excessively Expensive Money Market Fund as the Plan's Single Capital Preservation Investment Option." (Filing No. 87 at 82.) Plaintiffs argue the fund "did not provide meaningful retirement income to Plan participants, and, in fact, participants in the money market fund lost money on a net-inflation basis each year." *Id*. at 83. They contend the Defendants "failed to employ appropriate methods to investigate the merits of the Money Market Fund…or adequately investigate alternative capital preservation investments, such as a stable value fund," which Plaintiffs assert "would have provided Plan participants a lower risk and higher returning capital preservation investment with a guarantee of principal and accumulated interest." *Id*. at 83-84.

Plaintiffs make a second breach of fiduciary duty claim alleging the Defendants "failed to monitor the Fund's performance compared to relevant benchmarks and peer groups." *Id*. at 85-86.

Defendants contend Money Market Fund claims are time-barred because class representative, Hoffman, knew more than three years before the filing of this claim that the fund would not provide meaningful retirement income to Plan participants. (Filing No. 223 at 32.) They also argue the Plaintiffs have not shown any breach of fiduciary duty in connection with the Defendants' choice to offer a money market fund instead of a stable value fund. Defendants assert they had no fiduciary duty to consider or provide a stable value fund instead of a money market fund. *Id*. They also assert they did consider offering Plan participants a stable value fund but declined to do so "because the Vanguard [Money Market Fund] better fulfilled the purposes of the Plan when considered with the rest of the investment lineup." *Id*. at 34.

In response, Plaintiffs argue summary judgment is improper because "there are disputed factual questions concerning determinative issues—including whether Defendants engaged in a prudent process and whether Defendants' inclusion of the Money Market Fund as the capital preservation option was objectively prudent." (Filing No. 267 at 37.) Plaintiffs first attack Defendants' process, arguing they never evaluated whether offering some other type of fund instead of or in addition to a money market fund would have been in Plan participants' best interest. *Id*. They do not claim Defendants had a fiduciary duty to offer a stable value fund, just a fiduciary duty to consider offering one. *Id*. Plaintiffs also argue the Plan's investment in the money market fund was objectively imprudent, or at least that questions of material fact exist as to the prudence of the Defendants' choice not to offer a stable value fund. *Id*. at 41-42. The Court will address each contention in turn.

1.    **Statute of Limitations**

Under ERISA, a breach of fiduciary duty complaint is timely if filed no more than six years after "the date of the last action which constituted a part of the breach or violation" or "in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1). However, no action may be commenced "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2). The Seventh Circuit defines "actual knowledge" as "knowledge of 'the essential facts of the transaction or conduct constituting the violation,'" with the caveat that "it is 'not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality.'" *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 679 (7th Cir. 2014) (quoting *Rush v. Martin Petersen Co.*, 83 F.3d 894, 896 (7th Cir. 1996)).

Defendants assert the Plaintiffs' claims are time-barred because "Hoffman and the rest of the class were repeatedly informed, prior to December 29, 2012, that the Vanguard [Money Market Fund] was neither aiming to return, nor in fact returning, significant income on assets invested in it." ([Filing No. 223 at 32](#).) In fact, Plan information provided to participants stated that the Money Market Fund sought "to provide current income while maintaining liquidity and a stable share price of $1." ([Filing No. 221-5 at 33-34](#).)

But Plaintiffs do not argue that offering the Money Market Fund as the Plan's only capital preservation investment option was *per se* imprudent; they argue that "Defendants' fiduciary process in evaluating the fund lineup was imprudent." ([Filing No. 26 at 46](#).) The Seventh Circuit has said that "for process-based claims under §§ 1104 and 1106(a), the three-year limit is not triggered by knowledge of the transaction terms alone." *Fish* at 681. And "[e]ven for a substance-based claim, the terms of a transaction alone would only rarely provide actual knowledge under §

1113(2) since either an expert opinion or actual harm would likely be necessary before" a participant "could know of the flaws in the substance of a fiduciary's decision." *Id.* at 681, n. 4.

The Court agrees with the Plaintiffs. The three-year statute of limitations on Plaintiffs' Money Market Fund claim would begin when Plaintiffs had actual knowledge of the process Defendants used to determine the Plan would offer the Money Market Fund instead of alternative funds. The Plaintiffs' Money Market Fund claim is not time-barred because, although the participants received disclosures of the nature of the investment options offered, they were not informed of how those options were chosen nor that there may lower cost or higher yield alternatives that the Plan did not offer. Accordingly, the Court cannot grant summary judgment to Defendants on Plaintiffs' Money Market Fund claims based on ERISA's statute of limitations.

### 2. **Basis for Money Market Fund Claims**

To establish a breach of fiduciary duty under ERISA, Plaintiffs must prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the Plaintiffs. *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010). Defendants do not dispute their status as fiduciaries to the Plan but do dispute that they breached their fiduciary duty and that the Plaintiffs suffered any harm. (Filing No. 223 at 30.) As Plan fiduciaries, Defendants were required to carry out their duties "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…." 29 U.S.C. § 1104(a)(1). Fiduciary actions are evaluated in terms of "both procedural regularity and substantive reasonableness." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 678 (7th Cir. 2016).

Defendants argue that ERISA imposes no duty on them to provide a specific kind of fund—a stable value fund, for instance. ([Filing No. 223 at 10](#).) Instead Defendants assert even the strictest interpretation of ERISA would require fiduciaries only to "periodically consider whether the *entire* Plan investment menu offered an appropriate range of options so that Participants could materially affect their risk exposure and return when investing their accounts," and that the Defendants did that in this case. *Id*. Defendants designated evidence that Anthem's Chief Investment Officer ("CIO") and his staff "specifically considered whether to recommend a stable value fund and decided not to do so." *Id.* at 34 (citing [Filing No. 222-12 at 30](#).) Thus, the Defendants ask the Court for summary judgment on Counts III and IV of the Second Amended Complaint—the two claims relating to the Money Market Fund.

Plaintiffs dispute that they considered offering capital preservation funds other than the money market fund, saying "Defendants never evaluated whether it was in the best interest of Plan participants to offer a money market fund rather than some other type of capital preservation investment option." ([Filing No. 267 at 37](#).) Plaintiffs argue the Pension Committee only compared the Vanguard Money Market Fund to other money market funds, not other capital preservation options like stable value funds. However, Plaintiffs do not allege the Pension Committee had an absolute duty to offer a stable value fund as a capital investment option. *Id.* at 39. They argue that not only was the Pension Committee's decision-making process imprudent, but its decision to offer the Money Market Fund as the Plan's only capital preservation option was imprudent because "stable value funds are superior to money market funds with respect to, among other things, risk and return." *Id.* at 41.

The parties quibble over the effect of *Tibble v. Edison Int'l*, 729 F.3d 1110 (9th Cir. 2013), a case in which participants in Edison's retirement plan took issue with the managers of that plan

for, among other things, "include[ing] a short-term investment fund (or "STIF") rather than a stable value fund." 729 F.3d at 1136. The trial court granted summary judgment to Edison and the Ninth Circuit affirmed, finding "fatal to beneficiaries is the uncontroverted evidence that there were discussions about the pros and cons of a stable-value alternative." *Id.* The United States Supreme Court vacated that decision as to three other funds the beneficiaries thought were imprudent investment options—mutual funds that were available to the public at large. *Tibble v. Edison Int'l*, 135 S.Ct. 1823 (2015). In that opinion, the Supreme Court reminded the Ninth Circuit that one debate on the pros and cons of alternate funds is insufficient to fulfill a fiduciary duty under ERISA. Rather, "a trustee has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." 135 S.Ct. at 1828. On remand, the Ninth Circuit remanded to the trial court for determination of the beneficiaries' failure-to-monitor claim. *Tibble v. Edison Int'l*, 843 F.3d 1187 (9th Cir. 2016).

Each party argues this case supports its position on summary judgment. The Defendants draw the Court's attention to the first Ninth Circuit case, in which the Circuit Court affirmed summary judgment on the beneficiaries' claim that the fiduciaries had a duty to offer a stable value fund instead of the short-term investment fund—a claim very similar to the one Plaintiffs make here. However, Plaintiffs point out the language from the Supreme Court opinion, acknowledging that fiduciaries are obliged under ERISA to continuously review the investment options they offer to ensure those options are prudent—something Plaintiffs argue the Pension Committee failed to do in this case.

Plaintiffs argue a prudent trustee would consider risk, diversification, goals, and peer review when evaluating which funds to invest in, yet the Pension Committee never did that before

investing in the Money Market Fund. They cite the deposition testimony of an Anthem executive who does not recall the Pension Committee reporting on alternative capital preservation funds. (Filing No. 267-5 at 40-43.) Plaintiffs contend the Pension Committee's meeting minutes from 2008 to 2018 do not reflect any in-depth discussion over whether to continue to offer a money market fund or add alternative option to the Plan (Filing No. 219-1), despite the fact that Anthem staff identified a gap in the Plan lineup caused by the lack of a stable value fund. (Filing No. 219-23 at 22.)

However, another Anthem executive, CIO David Kretschmer, testified that there were "active discussions amongst our team" about whether a stable value fund would offer additional value to the package of funds already offered in the plan. (Filing No. 222-12 at 30.) Defendants also cited the deposition testimony of Anthem employee James Mattingly, who said that the Plan "already offered something that had…cash capital preservation…offering another thing that really wasn't a growth asset didn't serve the benefit for the majority of participants." Filing No. 222-11 at 50-51.) But that same employee, when asked whether the Pension Committee evaluated or investigated offering a stable value fund, said "I don't have a recollection one way or another." *Id.* at 52.

The Plaintiffs have established a genuine issue of disputed fact as to whether the process by which the Pension Committee managed the capital preservation funds offered in the Plan comported with ERISA's prudent fiduciary standard. Some designated evidence suggests that the Pension Committee did at least discuss the possibility of adding other funds to the Plan's capital preservation options—including a stable value fund. But other evidence indicates the Pension Committee rarely considered whether a money market fund was the optimal investment tool for participants or whether some superior option was out there. Because a genuine issue of disputed

fact exists as to the prudence of the Pension Committee's process, the Court need not determine whether an issue of disputed facts exists as to whether the substantive funds offered met ERISA's prudent fiduciary standard. Defendants' Motion for Summary Judgment is **denied** as to Counts III and IV of the second amended complaint.

B.    <u>**Excessive Fee Claims**</u>

In Counts I and II of their Second Amended Complaint, Plaintiffs allege Defendants breached their fiduciary duty by paying unreasonable investment management fees and unreasonable administrative fees to Vanguard. ([Filing No. 87 at 78-82](#).) Plaintiffs allege "Defendants selected and retained as Plan investment options mutual funds with excessively high fees relative to far less expensive investment options," and, in doing so, "failed to make Plan investment decisions based solely on the merits of the investment funds and the interest of participants." ([Filing No. 87 at 79](#).) They also allege "Defendants failed to engage in a prudent and loyal process for the selection and retention of a Plan recordkeeper." *Id.* at 81. Plaintiffs argue that Defendants breached their fiduciary duty by failing to solicit competitive bids from vendors on a flat per participant fee, and even when the Plan switched to a flat fee in 2013, that flat fee remained in excess of a reasonable fee for the service provided. *Id.*

One of Plaintiffs' primary contentions is that, before July 2013, the Committee was offering packages of retail mutual funds rather than institutional mutual funds, which are identical except that they cost less. ([Filing No. 267 at 18](#).) Retail mutual funds have that name because they are available to the public at large. Institutional funds are a class of shares only available to institutional investors such as large companies managing pensions for thousands of employees and retirees. Plaintiffs argue that Defendants either did not understand this difference or ignored it,

and thus paid the higher fees borne by retail funds when the lower-cost but otherwise equivalent institutional funds were available to them.

Defendants contend Plaintiffs' excessive fee claims are time-barred because the Plan disclosed its expense ratios to participants, giving them actual knowledge of the facts giving rise to their complaints more than three years before the initiation of this lawsuit. ([Filing No. 223 at 39](#).) They also argue Plaintiffs have not made a viable claim for breach of fiduciary duty because ERISA does not mandate particular fee structures or share classes, nor does it mandate requests for proposal or negotiation at any particular frequency. *Id.* at 39-44. Last, Defendants allege that Plaintiffs cannot show any loss resulting from defects in the Pension Committee's process of selecting recordkeeping fees. *Id.* at 44-46.

In response, Plaintiffs contend that Defendants failed to engage in a prudent process for selecting and retaining the Plan's investment options because Defendants "lacked a basic understanding of share classes, failed to investigate whether lower-cost share classes were available or beneficial, and failed to evaluate whether the continued use of retail share classes was appropriate." ([Filing No. 267 at 28](#).) Plaintiffs argue the Pension Committee attempted to delegate responsibility to Anthem's CIO or its human resources team, but because each of those employees thought the responsibility to evaluate possible lower-cost share classes laid with the other, no one ever investigated whether lower-cost share classes were available. *Id.* at 29. According to Plaintiffs, the Defendants also failed to engage in a prudent process for selecting the Plan's recordkeeper because they only once analyzed the reasonableness of fees and never conducted a request for proposal. *Id.* at 31-32. Failure to obtain reasonable fees resulted in a financial loss to the Plan and thus to the participants. *Id.* at 34-35. Again, the Court will address each contention in turn.

1.     **Statute of Limitations**

As they did with the Plaintiffs' Money Market Fund claims, Defendants argue Plaintiffs' excessive fee claims are time-barred by ERISA's three-year statute of limitations. (Filing No. 223 at 39.)  Under ERISA, no action may be commenced "three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113(2). And for the same reason it failed in relation to Plaintiffs' Money Market Fund claims—Plaintiffs did not have actual knowledge of the facts underlying their complaint three years before filing it—Defendants' argument fails here.  The generic plan information Defendants rely on to impute knowledge to the Plaintiffs did not disclose that identical lower-cost alternative fee structures may be available, nor did it provide Plaintiffs with actual knowledge of the Defendants' solicitation and monitoring process.

2.     **Viability of Excessive Fee Claims**

Defendants argue, and the Court agrees, that nothing in ERISA required the Committee to use a flat fee structure or to avoid an asset-based fee structure. (Filing No. 223 at 40.) But that is beside the point, as Plaintiffs do not argue that Defendants were duty-bound to implement a specific type of fee structure or asset class.  Plaintiffs argue that ERISA required the Defendants to consider, periodically, different types of fee structures to determine which structure would have resulted in the highest yield for participants.  (Filing No. 267 at 28.)  They further argue that ERISA imposed a duty on Defendants to review the Plan's recordkeeping fees and attempt to negotiate lower fees if the Plan's fees are unreasonable.  *Id.* at 31-32.

Plaintiffs' claim resembles one considered by the Seventh Circuit in *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 798 (7th Cir. 2011).  The Seventh Circuit summarized the Plaintiffs' argument in that case:

As we understand their claim, plaintiffs are arguing that prudent fiduciaries would have solicited competitive bids for recordkeeping services on a periodic basis— about once every three years—and that defendants' failure to solicit periodic bids after initially hiring Hewitt resulted in Hewitt receiving an excessive fee once its initial contract term expired. In support of this claim, plaintiffs offered the testimony of Lawrence R. Johnson, who has expertise in the area of retirement-plan recordkeeping services. Johnson reviewed the process that defendants followed when they extended Hewitt's contract and opined that defendants acted imprudently by extending the contract without first soliciting bids from other recordkeepers. Johnson further opined that a reasonable fee for the kind of recordkeeping services the Plan needed would have been between $20 and $27 per participant per year, rather than the $43 to $65 the Plan paid to Hewitt.

The *George* court denied the defendants' summary judgment motion.

Plaintiffs designated more than enough evidence to create disputed questions of fact as to whether Defendants discussed or even understood the difference between certain types of fee arrangements, whether they periodically checked to see if the Plan could pay lower administrative fees, and whether Defendants acted prudently regarding the fees paid by the Plan. Plaintiffs cite deposition testimony of Anthem employees and Pension Committee members who indicate they do not understand the difference between different kinds of share classes or did not ask Vanguard whether lower-cost fee arrangements were available for the Plan. (Filing No. 267-2; Filing No. 267-14; Filing No. 267-39.) But like the plaintiffs in *George*, Plaintiffs also cite the report of an expert opining that investment committees have a fiduciary duty to consider the expenses paid by the plan when determining how to invest. (Filing No. 267-72.) Plaintiffs' designated evidence is sufficient to raise a question of fact as to whether the Defendants breached their fiduciary duty by failing to negotiate recordkeeping fees with Vanguard or another company. (Filing No. 267 at 15-16.)

Defendants argue that Plaintiffs cannot show any loss resulting from defects in Defendants' process of selecting and paying recordkeeping fees. (Filing No. 223 at 44.) But having raised questions of fact as to whether the Plan paid reasonable fees, Plaintiffs have met the threshold to

survive a summary judgment motion. "It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks…." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016). The element of damages goes hand-in-hand with the reasonableness of the fees—if Defendants breached their fiduciary duty by failing to ensure the Plan paid reasonable fees, that breach necessarily shrunk Plaintiffs' investment by overpaying on administrative and investment fees.

The Defendants' Motion for Summary Judgment on Counts I and II is **denied**.

## C.  Failure to Monitor Claim

Defendants move for summary judgment on Count V, which alleges that any of the named Defendants not directly responsible for a fiduciary breach nonetheless breached its fiduciary duty by delegating that duty to an entity that did breach. (Filing No. 87 at 87.) Defendants argue that this claim is derivative of the claims discussed above brought in Counts I-IV. (Filing No. 223 at 46.) Because this claim is derivative of the other claims, and the Court denied summary judgment on those claims, the Court **denies** summary judgment on this claim as well.

## D.  Document Request Claim

Defendants move for summary judgment on Count VI, which alleges Defendants violated 29 U.S.C. § 1024(b)(4) by failing to provide Bell with information about the Plan at Bell's request. (Filing No. 87 at 91.) Section 1024(b)(4) requires a retirement plan administrator to "furnish a copy of the latest updated summary, plan description, and the latest annual report" along with several other documents "upon the written request of any participant or beneficiary." (footnote omitted). Plaintiffs' Second Amended Complaint alleges Plaintiff Bell sent a letter to the Pension Committee on October 5, 2015, requesting information, and her request went unanswered. The complaint alleges she sent a second letter on October 27, 2015, which also went unanswered.

Defendants offer three arguments in favor of summary judgment on this claim: (1) Plaintiffs have not shown that the Pension Committee received Bell's request; (2) Bell's letters were not addressed to the proper recipient identified in the Plan's summary plan description; and (3) awarding a penalty for violating this section of ERISA is at the Court's discretion, and the record does not reveal any bad faith on the Defendants' behalf in failing to respond to the request. (Filing No. 223 at 46-48.) For their first argument, Defendants rely on *Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 520 F.Supp. 2d 1022, 1042 (N.D. Ill. 2007) ("[I]mposing a penalty…when [the Plan Administrator] did not receive the request for documents would be at odds with the Seventh Circuit's guidance that the purpose of Section 1132(c) is not so much to punish as it is to induce plan administrators to comply with the notice requirements of ERISA") and *Romero v. SmithKline Beecham*, 309 F.3d 113, 119-20 (3d Cir. 2002) ("[W]e believe that [liability under 29 U.S.C. § 1132] requires actual receipt by the administrator…. [I]t is unlikely that Congress wanted to impose a civil penalty [where there is no] wrongful conduct."). Plaintiffs respond that they need not prove that Defendants actually received Bell's request, and that Bell mailed her request to the Pension Committee—the Plan "administrator" identified by ERISA as the party required to respond to requests. (Filing No. 267 at 44-45.) They offer as evidence the letter itself, signed by Heather Lea, Bell's attorney. (Filing No. 268-21.)

Defendants' reliance on *Jacobs* and *Romero* is misplaced. In *Jacobs*, the plan administrator did not receive the request for information because the request was sent to the wrong address. Similarly, in *Romero*, the plaintiffs sent a request to a representative other than the plan administrator and two months later the plan administrator provided the plan information. Neither case bears on Plaintiffs' contention that they twice directed requests for information to the Pension

Committee at the address provided by Defendants and the Pension Committee deliberately refused to accept both requests.  ([Filing No. 87 at 91](#).)

Nor does Defendants' second argument, that the Plan's summary plan description identified a different party as the optimal target for Bell's request, move the Court. The Pension Committee cannot avoid its statutory obligation to furnish plan information to participants by designating a third party and directing requests to that party.  ERISA requires the "administrator" to provide information, and it is the administrator who may be penalized when plan information is not provided.  29 U.S.C. § 1132(c)(1) (an administrator may be liable to a participant or beneficiary in the amount of up to $100.00 a day for failure or refusal to comply with a request for the latest copies of plan documents within thirty days after such request, "unless such failure or refusal results from matters reasonably beyond the control of the administrator").

The Court declines to grant summary judgment in Defendants' favor at its discretion, and therefore Defendants' Motion for Summary Judgment is **denied** as to Count VI.

## IV.  <u>CONCLUSION</u>

For the above reasons, the Court **DENIES** Defendants' Motion for Summary Judgment ([Filing No. 218](#)).  Counts I-VI survive Defendants' Motion and remain pending for trial.

**SO ORDERED.**

Date:  1/30/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alexander L. Braitberg
SCHLICTHER BOGARD DENTON LLP
abraitberg@uselaws.com

Troy A. Doles
SCHLICHTER, BOGARD & DENTON, LLP
tdoles@uselaws.com

Ada W. Dolph
SEYFARTH SHAW LLP (Chicago)
adolph@seyfarth.com

Heather Lea
SCHLICHTER, BOGARD & DENTON, LLP
hlea@uselaws.com

Laura Hughes McNally
MORGAN, LEWIS & BOCKIUS LLP
laura.mcnally@morganlewis.com

Ian Hugh Morrison
SEYFARTH SHAW LLP (Chicago)
imorrison@seyfarth.com

Jason Priebe
SEYFARTH SHAW LLP
jpriebe@seyfarth.com

Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON, LLP
jschlichter@uselaws.com

Andrew D. Schlichter
SCHLICHTER BOGARD & DENTON, LLP
aschlichter@uselaws.com

Sean Soyars
SCHLICHTER BOGARD & DENTON LLP
ssoyars@uselaws.com

Kurt C. Struckhoff
SCHLICHTER, BOGARD & DENTON, LLP
kstruckhoff@uselaws.com

Megan E. Troy
SEYFARTH SHAW LLP
mtroy@seyfarth.com

Michael A. Wolff
SCHLICHTER, BOGARD & DENTON, LLP
mwolff@uselaws.com