UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARY BELL, JANICE GRIDER, CINDY PROKISH, JOHN HOFFMAN, and PAMELA LEINONEN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 1:15-cv-02062-TWP-MPB |
| PENSION COMMITTEE OF ATH HOLDING COMPANY, LLC, ATH HOLDING COMPANY, LLC, BOARD OF DIRECTORS OF ATH HOLDING COMPANY, LLC, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER APPROVING FEES, COSTS AND AWARDS

Pending before the Court is Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards for Named Plaintiffs. ([Filing No. 371](#).) In their Motion, Class Counsel requests that the Court approve a fee for obtaining a settlement of class claims under the Employee Retirement Income Security Act ("ERISA"). The settlement provides a $23,650,000.00 monetary recovery for the benefit of Class Members. Taking into account the significant and powerful non-monetary relief and benefit of tax deferral, the total benefit to the Class exceeds $62 million dollars.

Class Counsel has asked this Court to approve a fee award of $7,882,545 which constitutes one-third of the monetary award. Additional improvements to the Plan as a result of the litigation and settlement bring the actual value to the Class far higher to a total value of over $62 million dollars. Class Counsel has also asked this Court to award it $513,015.32 for expenses. Additionally, Class Counsel has requested this Court approve incentive awards to the Class

Representatives and also to the Individual Named Plaintiffs. For the reasons set forth below, Class Counsel's Motion is **GRANTED**.

## I. BACKGROUND

Pursuant to the Settlement Agreement and this Court's Preliminary Approval Order, Class Counsel directed the mailing of individual notices to the Class and created a Class website to provide information to the Class. Individual notices were mailed to over 127,000 Class Members and, with an objection deadline of August 5, 2019, only one Class Member filed a timely objection. Filing No. 377 at 6.[1] This Court finds that only one objection compared to a total class of over 127,000 is a remarkable sign of the Class's overwhelming support for this Settlement and Class Counsel's request. As noted in this Court's final approval order and for the reasons stated therein, the lone objection to this Settlement is **denied**.

For over a decade, Class Counsel, in pioneering a new area of the law, have continuously demonstrated an unwavering and zealous commitment to represent American employees and retirees seeking to recover losses incurred due to alleged retirement plan mismanagement. Jerome Schlichter and Schlichter Bogard & Denton actually created the field of 401(k) excessive fee litigation which did not exist before. Filing No. 372-1 ¶13−15. Before Jerome Schlichter and the firm of Schlichter Bogard & Denton filed a series of cases in 2006 regarding excessive fees in 401(k) plans, there had never been a case brought for excessive fees in a 401(k) plan by any lawyer in the United States. *Id.* Class Counsel is firmly established as the "pioneer and the leader in the field of retirement Plan litigation." *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 U.S. Dist. LEXIS 93206, at *8 (S.D. Ill. July 17, 2015) (Reagan, C.J.).

---

[1] Current participants were not required to do anything to receive their share of the settlement. One other Class Member filed a notice that he was not a Class Member and requested that he be removed from the Class Member list. Filing No. 374 (stating that his participation in the Plan was outside the Settlement Period).

Class Counsel are "experts in ERISA litigation" with extraordinary skill and determination required to litigate these complex cases. *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 U.S. Dist. LEXIS 91385, at *6 (D. Minn. July 13, 2015). This Court notes that no 401(k) excessive fee cases had been filed before Class Counsel pioneered them, and agrees with other courts that the work of Jerome Schlichter and Schlichter Bogard & Denton "illustrates an exceptional example of a private attorney general risking large sums of money and investing thousands of hours for the benefit of employees and retirees." *Will v. General Dynamics Corp.*, No. 06-698, 2010 U.S. Dist. LEXIS 123349, at *8 (S.D. Ill. Nov. 22, 2010) (J. Murphy).

## II. **FINDINGS AND CONCLUSIONS**

Under the "common-fund" doctrine, class counsel is entitled to a reasonable fee drawn from the commonly held fund created by a settlement for the benefit of the class. *See, e.g., Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980). Additionally, the United States Court of Appeals for the Seventh Circuit has found that attorneys' fees based on the common fund doctrine are appropriate in ERISA cases. *See Florin v. Nationsbank*, 34 F.3d 560, 563 (7th Cir. 1994). A court must also consider the overall benefit to the class, including non-monetary benefits, when evaluating the fee request. *Spano v. Boeing Co.*, No. 06-743, 2016 U.S. Dist. LEXIS 161078, at *5 (S.D. Ill. Mar. 31, 2016) (J. Rosenstengel) (citing Manual for Complex Litigation, Fourth, § 21.71, at 337 (2004)). An assessment of the non-monetary benefits and relief obtained as part of a settlement is important so as to encourage attorneys to obtain future meaningful relief. As set forth below and as demonstrated through expert testimony offered via declaration, Class Counsel's efforts to secure additional relief beyond the monetary amount added significant value to the Settlement and ultimately to Class Members.

In determining whether to grant a requested fee in a class action settlement, the Seventh

Circuit Court of Appeals requires an analysis of whether the requested fee is within the range of fees that would have been agreed to at the outset of the litigation in an arms-length negotiation given the risk of nonpayment and the normal rate of compensation in the market at the time. *See In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). In common fund cases, "the measure of what is reasonable [as an attorney fee] is what an attorney would receive from a paying client in a similar case." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000). "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992). This requires the district judge to "ascertain the appropriate rate for cases of similar difficulty and risk, and of similarly limited potential recovery." *Kirchoff v. Flynn*, 786 F.2d 320, 326 (7th Cir. 1986).

In a common fund class action settlement, the Seventh Circuit Court of Appeals uses a percentage of the relief obtained rather than a lodestar or other basis. *See Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998); *see also Florin*, 34 F.3d at 566 (but leaving to the discretion of the district court the determination as to which method is the most efficient and suitable in a given case). "A one-third fee [percentage] is consistent with the market rate in settlements concerning this particularly complex area of law." *Spano,* 2016 U.S. Dist. LEXIS 161078, at *7 (quoting *Abbott*, 2015 U.S. Dist. LEXIS 93206, at *7); *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 U.S. Dist. LEXIS 12037, at *10 (S.D. Ill. Jan 31, 2014) (J. Herndon); *Will,* 2010 U.S. Dist. LEXIS 123349, at *9 (finding that in ERISA 401(k) fee litigation, "a one-third fee is consistent with the market rate"). In this case, Class Counsel's fee request totaling 33 1/3% of the monetary recovery, and a much smaller percentage when including non-monetary relief (as it must be), is reasonable and

4

consistent with the awards in many other cases also brought by Class Counsel, including those in this Circuit.

| Case | Fee % |
|---|---|
| *Sims v. BB&T*, No. 15-732, Filing No. 450 (M.D.N.C. May 6, 2019) | 33.3% |
| *Ramsey v. Philips N.A.*, No. 18-1099, Filing No. 27 (S.D.Ill. Oct. 15, 2018) | 33.3% |
| *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2017 WL 9614818 (C.D.Cal. Oct. 24, 2017) | 33.3% |
| *Gordan v. Mass. Mut. Life Ins. Co.*, No. 13-30184, 2016 WL 11272044 (D.Mass. Nov. 3, 2016) | 33.3% |
| *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, 1-2 (M.D.N.C. Sept. 29, 2016) | 33.3% |
| *Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D.Ill. Mar. 31, 2016) | 33.3% |
| *Abbott v Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (S.D.Ill. July 17, 2015) | 33.3% |
| *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 WL 4246879 (D.Minn. July 13, 2015) | 33.3% |
| *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432 (S.D.Ill. Jan. 31, 2014) | 33.33% |
| *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015 (C.D.Ill. Oct. 15, 2013) | 33.33% |
| *George v. Kraft Foods Global, Inc.*, Nos. 08-3899, 07-1713, 2012 WL 13089487 (N.D.Ill. June 26, 2012) | 33.33% |
| *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174 (S.D.Ill. Nov. 22, 2010) | 33.33% |
| *Martin v. Caterpillar Inc.*, No. 07-1009, 2010 WL 11614985 (C.D.Ill. Sept. 10, 2010) | 33.33% |

Class Counsel's fee request is wholly appropriate given the extraordinary risk Class Counsel accepted in agreeing to represent the Class; the fact that Class Counsel brought this kind of case when no one else had; Class Counsel's demonstrated willingness to devote tremendous resources for many years to the case as it has done in other cases; the substantial monetary recovery; and the additional value of the future relief included in this settlement to Plan participants.

A $7,882,545 fee would be justified without considering non-monetary relief and other benefits to the Class. However, as it must, the Court finds that the non-monetary benefits are real and significant improvements to the Plan that must be considered. The Court finds that the non-monetary relief is significant and valuable. That relief includes the following:

1. Within the first year of the agreed upon three-year Settlement Period, the Plan's Pension Committee shall cause to be published to then current Plan participants invested in the Plan's money market fund the fund fact sheet or similar disclosure that explains the risks of the Plan's money market fund investment option, the historical returns of the money market fund over the last 10 years, and the benefits of diversification;

2. By the end of the first year of the Settlement Period, the Pension Committee shall engage an independent Investment Consultant familiar with investment options in defined contribution retirement plans who shall, within a reasonable time after being engaged, review the Plan's fund lineup and make recommendations regarding the investment options offered in the Plan (including, but not limited to the money market fund). The Investment Consultant will make recommendations regarding whether to add a stable value fund to the Plan's investments;

3. The Pension Committee shall meet within one hundred fifty (150) days after receipt of the Investment Consultant's report and recommendations to review the Investment Consultant's report and evaluate whether and to what extent to implement the Investment Consultant's recommendations;

4. The Pension Committee shall consider, with the assistance of the Investment Consultant, among other factors: (a) the lowest-cost share class available to the Plan for any mutual fund considered for inclusion in the Plan as well as other criteria applicable to different share classes; (b) the availability of revenue sharing rebates on any share class available to the Plan for any mutual fund considered for inclusion in the Plan; and (c) the availability of collective trusts and or separately managed accounts, to the extent such investments are permissible and are otherwise have similar risks and features to a mutual
fund considered for inclusion in the Plan;

5. Within thirty (30) business days of the Pension Committee's consideration of the Investment Consultant's evaluation and recommendations, counsel for the Defendants will provide to Class Counsel a written summary of the Investment Consultant's recommendations and the decisions of the Pension Committee;

6. During the first eighteen (18) months of the Settlement Period, the Plan's fiduciaries will conduct a request for proposal for recordkeeping services for the Plan. The request for proposal shall request that any proposal provided by a service

provider for basic recordkeeping services to the Plan include a fee proposal based on a total fixed fee and on a per participant basis. After conducting the request for proposal ("RFP"), the Plan fiduciaries may decide to keep the Plan's current recordkeeper or retain a new recordkeeper based on the factors, including cost, that the Plan fiduciaries deem appropriate under the circumstances;

7. Within thirty (30) days of making a decision regarding selection of a recordkeeper based upon the RFP, Defendants' Counsel shall provide to Class Counsel a summary of the finalist proposals received, the decision made, and the reasons supporting the decision. This summary shall include the final agreed-upon fee for basic recordkeeping services; and,

8. Class Counsel will both monitor compliance with the settlement for three years and take any necessary enforcement action without cost to the Class.

Filing No. 367-1 at 26–27.

As demonstrated below, these benefits represent a substantial value to the Plan above and beyond the monetary settlement. In this regard, Class Counsel engaged Dr. Stewart Brown, a nationally recognized economist and authority on investment costs, to provide the Court with an estimate of the present value on just a portion of these provisions. As for the stable value relief portion of the Settlement, and based on the expected difference in returns using the ten-year average spread between the Vanguard Stable Value Fund and the Plan's Vanguard Federal Money Market Fund investment, Plan participants are expected to obtain discounted savings of an additional $31,775,413 in enhanced returns. *See* Filing No. 372-3 at ¶¶8–12. Dr. Brown also estimated the fee savings associated with a reduction in the Plan's recordkeeping fees as a result of a competitive bidding process are $2,223,195. *Id*. at ¶¶5–7. Dr. Brown concludes that the affirmative relief under the terms of the settlement will provide a combined present value to the class up to $33,998,608. *Id*. at 5−12.

When combined with the tax-deferred value of the monetary portion (Filing No. 372 at 15),

the total value of the benefit to the Class exceeds $62 million. *Id*. at 18.[2] Class Counsel's fee request is just under 13% of that amount. Accordingly, the fee requested by Class Counsel is significantly less than one-third of the value of the total benefit to the class.

This value is very substantial and was earned through Class Counsel's reputation as the authority in 401(k) excessive fee cases and then demonstrated the skill and determination in obtaining this result for the Class on a case that was set for trial. As this Court is well-aware and as noted below, Class Counsel performed substantial work from investigating this case, developing potential claims, responding to and overcoming dispositive motions and *Daubert* challenges, analyzing thousands of pages of documents produced during discovery, and engaging in substantial discovery motion practice. Filing No. 372-2 at ¶¶6−25. The significant result and benefits to the Class are evidence of those efforts, and this Court is firmly convinced that the scope and value of this Settlement was reached only due to Schlichter, Bogard & Denton's established reputation as "the preeminent firm in 401(k) litigation," *Nolte v. Cigna, Corp.*, No. 07-2046, 2013 U.S. Dist. LEXIS 184622, at *8 (C.D. Ill. Oct. 15, 2013) (J. Baker), and their skill and perseverance in litigating similar 401(k) excessive fee cases.

Class Counsel's reputation undoubtedly played a part in creating this Settlement. This Court agrees that Class Counsel's efforts have "educated plan administrators, the Department of Labor, the courts and retirement plan participants about the importance of monitoring recordkeeping fees." *Tussey v. ABB, Inc.*, 2015 U.S. Dist. LEXIS 164818, at *7–8 (W.D. Mo. Dec. 9, 2015). Indeed, as noted by multiple courts, "[t]he fee reduction attributed to Schlichter, Bogard & Denton's fee litigation and the Department of Labor's fee disclosure regulations approach $2.8

---

[2] The benefit of tax deferral for 20 years is an additional 18.6%. Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral*, Investment Company Institute (Sept. 17, 2013). Here, based on this data, the tax deferral would increase the actual value of the cash by $4,398,900, enhancing the value of the monetary portion to $28,048,900.

billion in annual savings for American workers and retirees." *Nolte*, 2013 U.S. Dist. LEXIS 184622, at *6 (J. Baker).

In addition, it is notable that the Independent Fiduciary has independently assessed the reasonableness of the requested fee. After a detailed analysis, the Independent Fiduciary concluded that the requested fee and reimbursement of expenses is reasonable. [Filing No. 377-1](#) (letter of Newport Trust Company approving the terms of the Settlement, including Class Counsel's fees and expenses).

In determining fees in a common fund class action settlement the use of a lodestar cross-check is no longer recommended in the Seventh Circuit. *See In re Synthroid Marketing Litig.*, 325 F.3d 974, 979–80 ("The client cares about the outcome alone" and class counsel's efficiency should not be used "to reduce class counsel's percentage of the fund that their work produced."); *Beesley*, 2014 U.S. Dist. LEXIS 12037, at *10 ("The use of a lodestar cross-check has fallen into disfavor."); *Will*, 2010 U.S. Dist. LEXIS 123349, at *10 ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."). Nevertheless, applying a lodestar cross-check analysis confirms the reasonableness of the award to Class Counsel.

In particular, this Court finds that Class Counsel spent 7,820.60 attorney hours and 1,354.20 hours of non-attorney professional time litigating this case. [Filing No. 372-2 at ¶ 5](#).[3] Class Counsel will also spend substantial time during the Settlement Period because Class Counsel has committed to monitoring Defendants' compliance with the terms of the Settlement and has committed to bring an enforcement action if needed without cost to the Class. Thus, Class Counsel

---

[3] "The Court may rely on summaries submitted by attorneys and need not review actual billing records." *Abbott*, 2015 U.S. Dist. LEXIS 93206, at n.1 (citing authority).

is committing to a possibility of substantial future time without compensation if that occurs.

If a lodestar cross-check is done, this Court finds that a national market rate is the relevant community for determining a reasonable hourly rate for this specialized area of complex litigation. *Beesley,* 2014 U.S. Dist. LEXIS 12037, at *11. Although Class Counsel works solely on a contingent fee basis, within the last several months, other courts have found that a national fee rate of up to $1,060.00 per hour, depending on years of attorney experience, was a reasonable national hourly rate for Class Counsel's time. *Sims v. BB&T Corp.*, No. 15-cv-00732, (M.D.N.C. May 6, 2019), and *Clark v. Duke University*, 16-cv-1044, Filing No. 166 at 8−9 (M.D.N.C. Jun. 24, 2019) (finding that the reasonable hourly rate was $1,060/hour for attorneys with at least 25 years of experience, $900/hour for attorneys with 15–24 years of experience, $650/hour for attorneys with 5–14 years of experience, $490/hour for attorneys with 2–4 years of experience, $330 for paralegals and law clerks). Filing No. 372-2 at ¶ 5.

Based on these 2018 rates and actual hours incurred to date, a straight lodestar fee would be $5,905,851. Filing No. 372-2 at ¶ 6. However, in cases like this one, where counsel "had no sure source of compensation for their services," the Court must apply a risk multiplier to compensate the attorneys for the risk of nonpayment in the event the litigation was unsuccessful. *Florin I*, 34 F.3d at 565. The Seventh Circuit has specifically "held that risk multipliers are appropriate in cases that are initiated under ERISA and settled with the creation of a common fund." *Cook v. Niedert*, 142 F.3d 1004, 10143 (7th Cir. 1998). The purpose of the multiplier is to "compensat[e] in a manner that provides adequate incentive for the attorney to bring this type of case." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). Applying this formula, the fee sought by Class Counsel, without even accounting for the significant value from the non-monetary relief as valued above, would result in a multiplier of only 1.33. In light of the substantial

risk of non-payment, particularly in light of the adverse precedent cited at length by Defendants in their dispositive motions, the protracted length of the litigation, and the fact that very few ERISA fiduciary breach cases have been successfully resolved at trial in favor of the plaintiffs, this small multiplier amount is reasonable. Again, however, and as noted above, apart from any lodestar multiplier, Class Counsel's requested attorney fee award is less than 13% of the total benefit to the class.

This Court further finds that the $513,015.32 in expenses for which Class Counsel seeks reimbursement is warranted. "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation." *Abbott*, 2015 U.S. Dist. LEXIS 93206, at *13 (citing Fed. R. Civ. P. 23); *Boeing v. Van Gemert*, 444 U.S. at 478). Given the high-stakes nature of this case, the Court finds that Class Counsel's incurred expenses are reasonable and should be reimbursed from the common fund. Indeed, this final expense item is significantly below the anticipated submitted expense of $650,000. Filing No. 368 at 6.

Plaintiffs request that Named Plaintiffs Mary Bell, John Hoffman, and Pamela Leinonen, who were successfully appointed by the Court to serve as Class Representatives in this action, receive a case contribution award of $20,000.00. Plaintiffs further request that Named Plaintiffs Janice Grider and Cindy Prokish, who were not named as Class Representatives but remained in the case in their individual capacity, receive a case contribution award of $5,000.00. "Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Marketing Litig.*, 264 F.3d at 722–23. Without their commitment to pursuing these claims, the successful recovery for the Class would not have been possible. Accordingly, the Court

11

approves these respective awards.

### III. CONCLUSION

After consideration of Class Counsel's Motion, and consistent with the findings of the Independent Fiduciary, the Court concludes that the requested attorneys' fee and expense reimbursements are fair, reasonable, and merited by Class Counsel's efforts resulting in relief for the Class. Accordingly, it is **ORDERED** that the requested attorneys' fee of $7,882,545 is **APPROVED**.

It is **FURTHER ORDERED** that the requested reimbursement of expenses in the amount of $513,015.32 is **APPROVED**. Thus, the Settlement Administrator shall pay the combined sum of **$8,395,560.32** to the firm of Schlichter, Bogard & Denton out of the Settlement Fund. The Settlement Administrator shall separately pay Named Plaintiffs Mary Bell, John Hoffman, and Pamela Leinonen each $20,000.00, and Named Plaintiffs Janice Grider and Cindy Prokish, who were not named as Class Representatives but remained in the case in their individual capacity, each $5,000.00.

Finally, and for the reasons stated on the record at the hearing held on September 4, 2019, the sole objection to the amount of the attorneys' fees, requested reimbursement of expenses, and incentive awards is **OVERRULED**.

**SO ORDERED**.

DATED: 9/4/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alexander L. Braitberg
SCHLICTHER BOGARD DENTON LLP
abraitberg@uselaws.com

Troy A. Doles
SCHLICHTER, BOGARD & DENTON, LLP
tdoles@uselaws.com

Heather Lea
SCHLICHTER, BOGARD & DENTON, LLP
hlea@uselaws.com

Jason Priebe
SEYFARTH SHAW LLP
jpriebe@seyfarth.com

Jerome J. Schlichter
SCHLICHTER, BOGARD & DENTON, LLP
jschlichter@uselaws.com

Andrew D. Schlichter
SCHLICHTER BOGARD & DENTON, LLP
aschlichter@uselaws.com

Sean Soyars
SCHLICHTER BOGARD & DENTON LLP
ssoyars@uselaws.com

Michael A. Wolff
SCHLICHTER, BOGARD & DENTON, LLP
mwolff@uselaws.com

Ada W. Dolph
SEYFARTH SHAW LLP (Chicago)
adolph@seyfarth.com

Ian Hugh Morrison
SEYFARTH SHAW LLP (Chicago)
imorrison@seyfarth.com

Megan E. Troy
SEYFARTH SHAW LLP
mtroy@seyfarth.com

Laura Hughes McNally
MORGAN, LEWIS & BOCKIUS LLP
laura.mcnally@morganlewis.com